THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

MARK A. ARTHUR, CIRILO MARTINEZ, and
PARI NAJAFI on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

        v.

SALLIE MAE, INC.,

                    Defendant.

CLASS ACTION

NO. 10-cv-00198-JLR

**PLAINTIFFS' MOTION FOR
AWARD OF ATTORNEYS' FEES
AND COSTS AND SERVICE
AWARDS TO THE NAMED
PLAINTIFFS**

**Noted for Consideration:
    December 17, 2010, 9:30 a.m.**

MOTION
NO. 10-cv-00198-JLR
901445.1

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 1

III.    CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS'
        FEES IS WELL-SUPPORTED. ......................................................................... 4

        A.      Application of the Percentage-of-the-Fund Method Is Warranted ............ 5

        B.      The Percentage-of-the-Fund Analysis Supports Counsel's Fee
                Request .................................................................................................... 7

                1.      Class Counsel Have Obtained An Excellent Result ...................... 8

                2.      Class Counsel Have Obtained an Early Resolution to This
                        Litigation. ................................................................................... 11

                3.      Class Counsel Have Faced Substantial Risk of Non-
                        Payment. ...................................................................................... 14

                4.      Fees in Similar Actions. .............................................................. 14

        C.      The Lodestar-Multiplier Cross-Check Confirms the Requested Fee. ...... 15

                1.      Class counsel's lodestar is reasonable. ....................................... 16

                2.      A significant multiplier is warranted ........................................... 17

                        a.      Class counsel Achieved Exceptional Results for the
                                Class. ................................................................................ 18

                        b.      The Contingent Nature of This Case ................................. 18

                        c.      The Novelty and Difficulty of Questions Involved ........... 18

                        d.      The Experience, Reputation and Ability of Counsel ........ 19

IV.     THE PAYMENT OF COSTS IS FAIR AND REASONABLE .......................... 19

        A.      Class counsel's Expenses Were Reasonably Incurred ............................ 20

V.      THE REQUESTED INCENTIVE AWARDS FOR THE NAMED
        PLAINTIFFS ARE REASONABLE. ................................................................. 21

VI.     THE CLASS RESPONSE TO DATE SUPPORTS APPROVAL OF THE
        REQUESTED FEE. .......................................................................................... 22

VII.    CONCLUSION ................................................................................................ 22

MOTION
NO. 10-cv-00198-JLR
901445.1

- i -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

# TABLE OF AUTHORITIES

**Page**

## CASES

*Antonopulos v. N. Am. Thoroughbreds, Inc.*,
  1991 WL 427893 (S.D. Cal. May 6, 1991)..............................................................7

*Arenson v. Board of Trade of City of Chicago*,
  372 F. Supp. 1349 (N.D. Ill. 1974) .....................................................................12

*Ballen v. City of Redmond*,
  466 F.3d 736 (9th Cir. 2006)...............................................................................15

*Bellows v. NCO Financial Systems, Inc.*,
  No. 07-CV-1413 W(AJB) 2009 WL 35468 (S.D. Cal. Jan 5, 2009) .....................14

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)....................................................................................5, 6, 7

*Central R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885)...............................................................................................5

*Fischer v. SJB-P.D. Inc.*,
  214 F.3d 1115 (9th Cir. 2000).............................................................................15

*Garner v. State Farm Mut. Auto. Ins. Co.*
  2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ........................................................8

*Goodrich Management Corp. v. Afgo Mechanical Services, Inc.*,
  2009 WL 2602200 (D.N.J. 2009).................................................................10, 11

*Graham v. DaimlerChrysler*,
  34 Cal.4th 553 (2005) .........................................................................................15

*Grays Harbor Adventist Christian Sc. v. Carrier Corp.*,
  No. C05-5437, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008)....................17, 21

*Hanlon v. Chrysler Group*,
  150 F.3d 1011 (9th Cir. 1998).......................................................................5, 15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...............................................................................................9

*In re Activision Sec. Litig.*
  723 F.Supp. 1373 (N.D. Cal. 1989) .................................................................8, 13

*In re Corel Corp. Inc. Sec. Litig.*,
  293 F.Supp.2d 484 (E.D. Pa. 2003) .....................................................................11

*In re Crazy Eddie Sec. Litig.*,
  824 F.Supp. 320 (E.D.N.Y. 1993) ........................................................................11

*In re Critical Path, Inc.*,
  No. C 01-00551 WHA 2002 WL 32627559 (N.D. Cal. June 18, 2002)................14

*In re Gen. Instruments Sec. Litig.*,
  209 F.Supp.2d 423 (E.D. Pa. 2001) .....................................................................11

MOTION
NO. 10-cv-00198-JLR
901445.1

- ii -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*In re Immune Response Sec. Litig.*,
 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 19, 20

4

*In re M.D.C. Holdings Sec. Litig.*,
 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ................................................................. 7

5

*In re Media Vision Tech. Sec. Litig.*,
 913 F. Supp. 1362 (N.D. Cal. 1996) ............................................................................. 20

6

*In re Medical X-Ray Film Antitrust Litig.*,
 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ................................................................. 11

7

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ........................................................................................... 7

8

In re Mego Fin. Corp. Secs. Litig.,
 213 F.3d 454 (9th Cir. 2000) ......................................................................................... 13

9

*In re Merry-Go-Round Enterprises, Inc.*,
 244 B.R. 327 (Bankr.D.Md. 2000) ............................................................................... 16

10

*In re Omnivision Technologies, Inc.*,
 559 F.Supp.2d 1036 (N.D. Cal. 2008) ......................................................................... 6, 8

11

*In re Omnivision Techs., Inc.*,
 2007 WL 4293467 (N.D. Cal. Dec. 6, 2007) ................................................................. 8

12

*In re Public Serv. Co. of New Mexico*,
 1992 WL 278452 (S.D. Cal. July 28, 1992) ................................................................... 7

13

*In re Rite Aid Corp. Sec. Litig.*,
 146 F.Supp.2d 706 (E.D. Pa. 2001) ............................................................................. 16

14

*In re Rite Aid Corp. Sec. Litig.*,
 362 F.Supp.2d 587 (E.D. Pa.2005) ............................................................................. 16

15

*In re RJR Nabisco, Inc. Sec. Litig*
 1992 WL 210138 (S.D.N.Y Aug. 24, 1992) ............................................................... 16

16

*In re Visa Check/Mastermoney Antitrust Litig.*,
 297 F.Supp.2d 503 (E.D.N.Y 2003) ............................................................................... 9

17

*In re Washington Public Power Supply System Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994) ............................................................................... 5, 15, 18

18

*Kerr v. Screen Extras Guild, Inc.*,
 526 F.2d 67 (9th Cir. 1975) ................................................................................... 15, 18

19

*Lealao v. Beneficial California, Inc.*,
 82 Cal. App. 4th 19 (2000) ........................................................................................... 13

20

*Linney v. Cellular Alaska P'ship*
 1997 WL 450064 (N.D. Cal. Jul. 18, 1997) ............................................................. 9, 10

21

*Linney v. Cellular Alaska P'ship*,
 151 F.3d 1234 (9th Cir. 1998) ....................................................................................... 13

22

23

24

25

26

MOTION
NO. 10-cv-00198-JLR
901445.1

- iii -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

**TABLE OF AUTHORITIES**
(continued)

Page

*Missouri v. Jenkins by Agyei*,
   491 U.S. 274 (1989)..................................................................................... 6

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008).................................................................. 16

*Najafi v. SLM Corporation d/b/a Sallie Mae*,
   Case No. 10 Civ. O530 MMA (CAB) (S.D. Cal. 2010) ........................ 4

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989)................................................................ 6, 7

*Pelletz v. Weyerhaeuser Co.*,
   255 F.R.D. 537 (W.D. Wash. 2009) ................................................ 12, 21

*Pelletz v. Weyerhaeuser Company*,
   No. C08-0334, 2009 U.S. Dist. LEXIS 1803 (W.D. Wash. Jan. 9, 2009)........................... 17

*Pinto v. Princess Cruise Lines, Ltd.*,
   513 F.Supp.2d 1334 (S.D. Fla. 2007) .................................................... 9

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990)................................................................ 7

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)............................................................. 5, 9

*Steiner v. Am. Broad. Co.*,
   248 Fed. Appx. 780 (9th Cir. 2007) ..................................................... 15

*Sutton v. Bernard*,
   504 F.3d 688 (7th Cir. 2007)................................................................. 6

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993).................................................................... 7

*Vincent v. Hughes Air West. Inc.*,
   557 F.2d 759 (9th Cir. 1977)................................................................. 5

*Wershba v. Apple Computer, Inc.*,
   91 Cal. App. 4th 224 (2001) ................................................................. 5

*Wright v. Linkus Enter., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) ...................................................... 8, 13

**STATUTES**

47 U.S.C.
   § 27.......................................................................................................... 2

**OTHER AUTHORITIES**

*MCL 4th*
   § 14.121................................................................................................. 14
   § 14.122.......................................................................................... 16, 18

MOTION
NO. 10-cv-00198-JLR
901445.1

- iv -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON 98103
TELEPHONE: (206) 816-6603

**TABLE OF AUTHORITIES**
**(continued)**

Page

**TREATISES**

Federal Judicial Center, *Manual for Complex Litigation*, (4th ed. 2004)
    § 27.71 ................................................................................................................................. 9

MOTION
NO. 10-cv-00198-JLR
901445.1

- v -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON 98103
TELEPHONE: (206) 816-6603

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

3

I.    <u>**INTRODUCTION**</u>

4

Class counsel submit this uncontested motion for an award of $4,875,000.00 in attorneys'

5

fees and out-of-pocket costs, and a $2,500 service award for each of the named Plaintiffs for

6

services they have rendered to the Class by stepping forward to bring this case.

7

Class counsel's request is squarely supported by the percentage-of-the-fund method of

8

calculating attorneys' fees applicable to common fund cases like this one under Ninth Circuit law.

9

Class counsel's fee and cost request, while not insubstantial, is less than the Ninth Circuit

10

benchmark, which provides for recovery out of a common fund of 25 percent of the fund *plus*

11

costs.  Here, Class counsel's request represents 24.8 percent of the total Fund, costs included,

12

without even taking into account the tremendous value of the equitable relief that is the core relief

13

provided by the Settlement.  Class counsel's fee request is appropriate in light of the

14

extraordinary result Class counsel achieved for the Class in such quick fashion, which includes

15

both the ability to stop entirely the automated calls to cellular phones that are the entire basis for

16

this litigation, as well as a total payment by Sallie Mae of $19,630,000.  Class counsel's requests

17

for reimbursement of their out-of-pocket costs (subsumed within the requested amount, not in

18

addition to it), and for a service awards to the named Plaintiffs for their service to the Class, are

19

similarly supported by Ninth Circuit law and the facts of this case.

20

For these reasons, and as detailed below, Class counsel respectfully request that the Court

21

grant their motion and award fees and costs in full, as well as payment of the full service awards.

22

II.    <u>**FACTUAL AND PROCEDURAL BACKGROUND**</u>

23

Sallie Mae, Inc.'s primary business is to originate and service student loans.  Plaintiffs

24

brought this case as a consumer protection class action under the Telephone Consumer Protection

25

Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A), alleging that Sallie Mae has engaged in a systematic

26

practice of making calls to consumers' cellular telephones through the use of automatic telephone

MOTION
NO. 10-cv-00198-JLR
901445.1

- 1 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1  dialing systems and/or an artificial or prerecorded voice without their prior express consent.  *See*

2  *generally* Second Class Action Complaint for Damages and Injunctive Relief Pursuant to 47

3  U.S.C. § 227 *et seq.* (Dkt. No. 31).  Plaintiffs Mark A. Arthur, Cirilo Martinez, and Pari Najafi

4  were named as representative plaintiffs.  *See id.*  They allege that Sallie Mae contacted Plaintiffs

5  on Plaintiffs' cellular telephones via automatic telephone dialing systems that use an artificial or

6  prerecorded voice (*id.* at ¶¶ 26, 28), despite that fact that neither Plaintiffs Arthur and Martinez

7  nor Plaintiff Najafi's son listed any cellular telephone number on their Signature Student Loan

8  Applications, Promissory Notes, or on any other documents at any time during the transaction

9  that resulted in the debt owed to Sallie Mae, nor did they verbally provide Sallie Mae with a

10  cellular phone number at any time during the transaction that resulted in the debt owed to Sallie

11  Mae.  *Id.* at ¶¶ 15-16, 19-20, 23-24.

12  Sallie Mae denies all of Plaintiffs' allegations and has contended that its legal and factual

13  arguments preclude both class certification and liability under the TCPA.  Sallie Mae claims to

14  possess evidence that certain Plaintiffs and other individuals provided cellular telephone numbers

15  and either expressly requested that Sallie Mae use them or expected that Sallie Mae would do so.

16  In addition, Sallie Mae maintains that it has internal policies regarding individuals' prior express

17  consent to autodialing their cellular telephones.

18  On October 27, 2009, Arthur Counsel initiated pre-filing discussions with Sallie Mae's

19  corporate representatives and agreed to a tolling agreement to preserve the Class's rights during

20  the pendency of the settlement discussions (obviating the need for filing a Complaint), exchanged

21  pertinent information, and agreed to continue to work cooperatively towards resolution.  Selbin

22  Decl. at ¶¶ 8-10.  Over the following several months, the parties engaged in extensive

23  negotiations including an exchange of at least nineteen letters, numerous emails, and many

24  telephone conversations that thoroughly analyzed the relevant issues, exploring their respective

25  positions on the merits of the action and viability of class certification.  *See id.* at ¶ 11.  The

26  parties' correspondence included the exchange of relevant information and documents, including

MOTION
NO. 10-cv-00198-JLR
901445.1

- 2 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

client loan records, form loan applications and promissory notes in use during the class period, and case law and relevant rulemaking by the FCC. *Id.* At all times the negotiations were highly adversarial, non-collusive, and at arm's length. *Id.* at ¶ 12. Concurrent with settlement negotiations, Arthur Counsel continued to interview and collect relevant information and documents from affected class members. *Id.* at ¶ 13.

Plaintiff Mark Arthur filed the instant action on February 2, 2010. Selbin Decl. at ¶ 16. Following the filing of Plaintiff Arthur's complaint, over 100 Class Members contacted Arthur Counsel to provide additional information and documents supporting Plaintiffs' TCPA claim. *Id.* at ¶ 17. Arthur Counsel requested and received informal discovery of confidential, proprietary information from Sallie Mae on April 6, 2010. *Id.* at 23-24. Sallie Mae also provided answers to informal questions posed by Arthur Counsel. *Id.* at ¶ 25.

On April 12, April 20, May 12, and June 21, the parties engaged in lengthy and contentious mediated settlement negotiations before The Honorable Edward I. Infante (Ret.). Selbin Decl. at ¶ 26-28. Counsel exchanged a series of counterproposals on key aspects of the Settlement, including the parameters of the practice changes and monetary relief for the Class, and the meaning and interpretation of the eligibility requirements. *Id.* at 29. The negotiations were again adversarial, non-collusive, and at arm's length. *Id.* at 30.

During this period, Arthur Counsel were in contact with scores of absent Class members to gather information about their experiences and problems. Selbin Decl. at ¶ 31. This information was essential to Arthur Counsel's ability to understand the nature of the alleged problem, the language of the loan agreements at issue, and potential remedies. *Id.* Through the mediated settlement negotiations and the investigation efforts, the parties reached an agreement in principle pursuant to a mediator's proposal and executed a Memorandum of Understanding ("MOU") on June 23, 2010. *Id.* at ¶¶ 32-33

The autodialer issues were also brought to the attention of the Law Offices of Douglas J. Campion by its client, Pari Najafi. Unaware of the investigation and negotiations by Mark Arthur

MOTION
NO. 10-cv-00198-JLR
901445.1

- 3 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1    and Cirilo Martinez, Mr. Najafi filed a separate action in the Southern District of California,

2    entitled *Najafi v. SLM Corporation d/b/a Sallie Mae*, Case No. 10 Civ. O530 MMA (CAB) (S.D.

3    Cal. 2010) on March 11, 2010.  The *Najafi* Class, however, "exclude[d] the original borrowers on

4    the promissory notes and [wa]s limited to the cosigners called on their cellular phones."  Najafi

5    Complaint, ¶ 19.  The class definition in this action already included the more limited class

6    alleged in *Najafi*.  Once the MOU was signed, Arthur Counsel sent it to *Najafi* Counsel.  Selbin

7    Decl. at ¶ 35.  *Najafi* Counsel evaluated the MOU and confirmed that they supported the

8    settlement.  *Id.*

9         Following execution of the MOU, the parties engaged in confirmatory discovery,

10   including discovery of facts necessary to reasonably confirm the terms of the MOU and

11   administrative plans and procedures for compliance with the terms of the Settlement.  Selbin

12   Decl. at ¶¶ 37-38.  Arthur Counsel's review of Sallie Mae's written discovery responses did not

13   change Plaintiffs' views of the agreed-upon Settlement.  *Id.*

14        Plaintiffs submitted their Uncontested Motion for Preliminary Settlement Approval on

15   September 3, 2010. (Dkt. No. 32.)  This Court granted preliminary approval in an order dated

16   September 14, 2010. (Dkt. No. 34), and modified September 17, 2010 (Dkt. No. 39). Thereafter,

17   Notice was distributed to the Class according the plan adopted by the Parties in the Settlement

18   Agreement and approved by this Court's Order granting preliminary approval.  *See* Declaration of

19   Jennifer M. Keough Regarding Notice Dissemination and Settlement Administration ("Keough

20   Decl.") at ¶¶ 3-16.[1]

21   **III.    CLASS COUNSEL'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES IS
             WELL-SUPPORTED.**

22

23        Pursuant to the settlement agreement, Class counsel seek an award of $4,875,000.00 in

24   attorneys' fees and litigation expenses.  This represents 24.8 percent of the total of $19,630,000

25   _____
[1] Plaintiffs address in detail the Parties' compliance with the Court-approved Notice plan in their
motion for final settlement approval, submitted concurrently.

26

MOTION
NO. 10-cv-00198-JLR
901445.1

- 4 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1    Sallie Mae is paying in settlement, as a "common fund."[2]  Sallie Mae does not oppose Class

2    counsel's application, and the Court has preliminarily approved the award.

3           Where counsel for a class seek fees from a common fund, courts use one of two methods

4    to determine whether the request is reasonable: "percentage-of-the-fund" or "lodestar/multiplier".

5    *Staton v. Boeing Co.*, 327 F.3d 938, 963-64 (9th Cir. 2003); *Vizcaino v. Microsoft Corp.*, 290

6    F.3d 1043, 1048–49 (9th Cir. 2002); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir.

7    1998).  Regardless of which method is applied, the fundamental requirement is that the resulting

8    fee is fair and reasonable.  *Staton*, 327 F.3d at 963-64.  Here, Class counsel's request for fees is

9    reasonable under the percentage-of-the-fund analysis, and is further confirmed by the

10   lodestar/multiplier cross-check.

11          A.      <u>**Application of the Percentage-of-the-Fund Method Is Warranted**</u>

12          For well over a century, federal courts have recognized that when counsel's efforts result

13   in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel

14   have an equitable right to be compensated from that fund for their successful efforts in creating it.

15   *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court

16   "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is

17   entitled to a reasonable attorney's fee from the fund as a whole"); *Central R.R. & Banking Co. v.*

18   *Pettus*, 113 U.S. 116 (1885); *Staton*, 327 F.3d at 967; *In re Washington Public Power Supply*

19   *System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit in the creation of a

20   fund should share the wealth with the lawyers whose skill and effort helped create it"); *Vincent v.*

21   *Hughes Air West. Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)  ("[A] private plaintiff, or his attorney,

22   whose efforts create, discover, increase or preserve a fund to which others also have a claim is

23   _____

[2] The $19,630,000 common fund includes:  (1) $19.5 million paid by Sallie Mae into a settlement

24   fund, out of which eligible Class Members who file qualified claims will receive Monetary
     Awards, attorneys' fees and costs, and service awards, will be paid, and all costs of notice and
     claims administration will be paid; (2) $85,000 for a dedicated *cy pres* contribution to cover the

25   claims of certain Class Members who do not have, and never have had, lending or servicing
     relationships with Sallie Mae, and (3) $45,000 for additional, targeted publication notice to reach

26   those Class Members.

MOTION
NO. 10-cv-00198-JLR
901445.1                                    - 5 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1    entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

2           The common fund doctrine rests on the understanding that attorneys should normally be

3    paid by their clients.  *See Boeing*, 444 U.S. at 478.  Where the attorneys' and unnamed class

4    member clients have no express retainer agreement, those who benefit from the fund without

5    contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common

6    fund.  *See id.*; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).  When

7    clients do not pay an ongoing hourly fee to their counsel, they typically negotiate an agreement in

8    which counsel's fee is based upon a percentage of any recovery.  Here, for example, Arthur

9    Counsel's retainer agreements with Plaintiffs Arthur and Martinez provide that counsel "will be

10   entitled to compensation for their services in the amount of one-third (33 1/3%) of [any]

11   settlement proceeds."  Selbin Decl. at ¶ 51.  The percentage-of-the-fund approach mirrors this

12   aspect of the market and, accordingly, reflects the fee that would have been negotiated by the

13   class members in advance, had such negotiations been feasible, given the prospective

14   uncertainties and anticipated risks and burdens of the litigation.  *See, e.g.*, *Paul, Johnson, Alston*

15   *& Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("[I]t is well settled that the lawyer who

16   creates a common fund is allowed an extra reward, beyond that which he has arranged with his

17   client, so that he might share the wealth of those upon whom he has conferred a benefit."); *Sutton*

18   *v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) ("In deciding fee levels in common fund cases, we

19   have consistently directed district courts to 'do their best to award counsel the market price for

20   legal services, in light of the risk of nonpayment and the normal rate of compensation in the

21   market at the time.'"); *cf. Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) (market factors

22   should be considered in evaluating reasonableness).

23          For these reasons, the percentage-of-the-fund method is overwhelmingly preferred by

24   courts.  Theodore Eisenberg & Geoffrey P. Millery, *Attorneys' Fees and Expenses in Class Action*

25   *Settlements: 1993-2008*, 7 Journal of Empirical Legal Studies 248 (2010) (attached as Exhibit F

26   to the Selbin Decl.).  An empirical study based on eighteen years of published opinions on

MOTION
NO. 10-cv-00198-JLR
901445.1

- 6 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

settlements in 689 common fund class action and shareholder derivative settlements in both state and federal courts found that:  (1) 83 percent of cases employed the percentage-of the-recovery method, and (2) the number of courts employing the lodestar method has declined over time, from 13.6 percent from 1993-2002 to 9.6 percent from 2003 to 2008.  *Id.* at 267-69; accord Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards*, 7 Journal of Empirical Legal Studies (forthcoming 2010) at 25 (attached as Exhibit G to the Selbin Decl.) (finding, in a similar empirical study of 688 settlements approved by federal district courts during 2006 and 2007, that 69 percent of courts employed the percentage-of-the-settlement method, 12 percent  employed the lodestar method, and 20 percent  did not report which method they used).

Here, the Settlement preliminarily approved by the Court establishes a $19,630,000 common fund.  Because Class members have not paid Class counsel for their efforts, equity requires them to pay a fair and reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually.  *Boeing*, 444 U.S. at 479-81.

## B.     The Percentage-of-the-Fund Analysis Supports Counsel's Fee Request

The benchmark for an attorneys' fee award in the Ninth Circuit is twenty-five percent of the common fund.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  Courts frequently award fees greater than the benchmark.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1049-50; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000).[3]  Indeed, courts have observed that, "in most common fund cases, the award exceeds that [25%] benchmark."  *See, e.g.*, *In re Omnivision Techs., Inc.*, 2007 WL 4293467 at *10 (N.D. Cal. Dec. 6, 2007).

---

[3] *See also In re Public Serv. Co. of New Mexico*, 1992 WL 278452, at *12 (S.D. Cal. July 28, 1992) (awarding one-third); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, 1991 WL 427893, at *4 (S.D. Cal. May 6, 1991) (awarding one-third); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *10 (S.D. Cal. Aug. 30, 1990) (awarding 30% in fees, plus expenses).

MOTION
NO. 10-cv-00198-JLR
901445.1

- 7 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1    Courts in the Ninth Circuit have repeatedly awarded fees of 25% or more in cases where a

2    common fund was created through a settlement.[4]  When examining fees, "district courts in the

3    Ninth Circuit 'should be guided by the fundamental principle that fee awards out of common

4    funds be *reasonable under the circumstances*.'"  *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468,

5    476 (E.D. Cal. 2009) (citing *Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys.

6    Sec Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994) (internal quotations omitted and emphasis in

7    original)).  "In looking at the circumstances of each case, relevant factors may include early

8    settlement, achievement of an excellent result, risk, and a showing of standard fees for similar

9    litigation." *Wright*, 259 F.R.D. at 476−77 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

10   1048−50 (9th Cir. 2002)).

11   All four factors demonstrate that Class counsel's request for $4,875,000.00 in attorneys'

12   fees and costs (24.8 percent of the common fund, costs included) is reasonable under the

13   circumstances.  Class counsel have worked hard to achieve an early resolution of this case.  *See

14   generally* Selbin Decl. ¶¶ 8-38.  After the lawsuit was filed, Arthur Counsel obtained informal

15   discovery from Plaintiffs, Class Members, and Sallie Mae.  *Id.*, ¶¶ 10, 11, 13, 17, 23, 24, 25, 31,

16   36, 37.  Arthur Counsel then spent numerous hours analyzing the documents.  *Id.*  In addition,

17   Arthur Counsel spent substantial time interviewing potential class members and evaluating their

18   claims.  *Id.*, ¶¶ 8, 13, 17, 31.  By working hard to accomplish these tasks in a short time frame,

19   Class counsel were able to negotiate an efficient, favorable, and timely result for the Settlement

20   Class Members.

21          1.      **Class Counsel Have Obtained An Excellent Result.**

22   Class counsel's interviews with the Plaintiffs and over 100 Class members during their

23   workup and the pendency of this litigation revealed that putting a stop to the automated calls to

24   [4] *See, e.g., Castaneda v. Burger King Corp.*, 2010 U.S. Dist. LEXIS 78299 (N.D. Cal. Jul. 12,
     2010); *Vizcaino*, 290 F.3d 1043; *Garner v. State Farm*, 2010 WL 1687829 (N.D. Cal. Apr. 22,

25   2010); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009); *In re
     Omnivision*, 559 F. Supp. 2d 1036; *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal.

26   1989).

MOTION
NO. 10-cv-00198-JLR
901445.1

- 8 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

their cellular phones was the single most important goal of this litigation, something confirmed subsequently by Class counsel's post-settlement contact with some 2,500 Class members. *See* Selbin Decl. at ¶¶ 13, 17, 31, 41.  In addition to obtaining this relief, Class counsel also obtained a total payment by Sallie Mae of $19,630,000.00, out of which eligible Class Members who file qualified claims will receive Monetary Awards, and at least $85,000 for a dedicated *cy pres* contribution to cover the claims of certain Class Members who do not have, and never have had, lending or servicing relationships with Sallie Mae.  Class counsel secured this timely relief in less than ten months from the date of filing to final approval.  The results Class counsel have achieved are excellent by any measure.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (results achieved most important factor in determining appropriate fee award); *Vizcaino*, 290 F.3d at 1049; Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p.336 (4th ed. 2004) (the "fundamental focus is on the result actually achieved for class members").

**Injunctive Relief**:  While Plaintiffs request *less than* the 25 percent benchmark, awarding fees *above* the 25 percent benchmark is fair and reasonable where counsel has achieved valuable non-monetary relief in addition to a monetary fund.  *See Staton*, 327 F.3d at 974 (court "should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund Class counsel should receive as attorneys' fees."); *Vizcaino*, 290 F.3d at 1049 (affirming enhanced fee award where "the court found that counsel's performance generated benefits beyond the cash settlement fund").[5]  Class counsel achieved an excellent result for the Settlement Class.  The Settlement provides relief for all Class members who have received automated calls.  All Class Members will be able to revoke Sallie Mae's ability to call them on a cellular telephone through use of an automatic telephone dialing system

---

[5] *Accord Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at * 7 (N.D. Cal. Jul. 18, 1997) (1/3 fee award where settlement provided additional non-monetary relief); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y 2003) ("the substantial injunctive relief here should inform [the court's] decision on awarding fees"); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (30% fee reasonable where important non-monetary relief achieved).

MOTION
NO. 10-cv-00198-JLR
901445.1

- 9 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON 98103
TELEPHONE:  (206) 816-6603

and/or an artificial or prerecorded voice.  The process to effectuate this relief is simple and straightforward, involving the submission of a single-page form.

**Monetary Relief**:  The Settlement requires total payment by Sallie Mae of $19,630,000 – a substantial sum, especially in a case that involves only statutory damages.

TCPA statutory damages are generally considered to be punitive damages designed to deter wrongful conduct, not compensatory damages.  *See, e.g.*, *Goodrich Mgmt. Corp. v. Afgo Mech. Servs., Inc.*, 2009 WL 2602200, at *5 (D.N.J. 2009) (holding that the TCPA's statutory damages provisions are "a punitive element to deter such conduct and motivate private lawsuits").[6]  Plaintiffs respectfully submit that this Settlement adequately effectuates those purposes.  The fact that the $19,630,000 Settlement does not constitute the full measure of statutory damages potentially available to the Class does not merit any deviation from the 25% benchmark.  *See, e.g.*, *Linney*, 151 F.3d at 1242 ("[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. Thus, the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.") (citations omitted). First, courts regularly award a 25 percent fee or greater where the proportional recovery for the class is far less than full where there were "actual," out-of-pocket damages, unlike here, where TCPA statutory damages bear no relationship to any actual economic harm suffered by Class

---

[6] *Covington & Burling v. International Mktg. & Research, Inc.*, No. CIV.A. 01-0004360, 2003 WL 21384825, 9 (D.C. Super. Apr. 17, 2003) (TCPA statutory damages provisions designed "to punish and deter certain proscribed conduct"); *Kaplan v. Democrat & Chronicle*, 266 A.D.2d 848, 698 N.Y.S.2d 799, 800-01 (N.Y. App. Div. 1999) (TCPA damages are punitive as actual damages need not be proven to recover); *see also ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94, 100, 50 P.3d 844, 850 (Ariz. App. Div. 1, 2002) (TCPA statutory damages provisions "designed not only to compensate for the actual damages and unquantifiable harm, but also to deter  the offensive conduct."); *but see Hooters of Augusta, Inc. v. American Global Ins. Co.*, 272 F. Supp. 2d 1365, 1377 (S.D. Ga. 2003) (holding that TCPA is a remedial statute in response to insurer's argument that TCPA judgment constituted penalties not covered by insurance); *Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (same).

MOTION
NO. 10-cv-00198-JLR
901445.1

- 10 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

members.[7]  Second, while the TCPA provides a court with discretion to award "up to $500" per violation, there was a risk that the Court would not exercise its discretion to award the full amounts potentially available.  Plaintiffs respectfully submit that the Settlement, by requiring Sallie Mae to pay $19.63 million, fully serves the core purposes of the TCPA.

While compensation is not the primary purpose of TCPA statutory damages, the award also will compensate Class members for their claims.  While the precise amount of each Class Member's Monetary Award is unknown, the parties estimated that each qualified claimant will receive an average recovery of at least $20-40.  (As of the date of this brief, 55,974 Class members have submitted claims for monetary awards (Keough Decl. at ¶ 17), which means the recovery would be $261.28 if paid today).  Plaintiffs submit that this amount adequately compensates Class members for the cell phone minutes and time they expended in listening to each automated phone call.  *Cf. Goodrich Mgmt. Corp.*, 2009 WL 2602200, at *5 (noting in TCPA "junk fax" case that "actual out-of-pocket monetary loss to the recipient of an unwanted fax advertisement is slight, only the cost of a few sheets of paper and ink").

Given the results achieved, the requested fee is reasonable.

### 2.    Class Counsel Have Obtained an Early Resolution to This Litigation.

This Court's standing order required Class counsel to work hard to achieve an early resolution of this case.  *See* Order Regarding Initial Disclosures, Joint Status Report, and Early Settlement (Dkt. No. 14) at 3 ("When civil cases are settled early — before they become costly and time-consuming — all parties and the court benefit.").  Courts in this District have repeatedly encouraged the parties to achieve swift resolution of complex class actions.  *See, e.g., Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 539 (W.D. Wash. 2009) (approving prompt settlement

[7] *See, e.g., In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484, 489-490, 498 (E.D. Pa. 2003) (1/3 fee where settlement fund equaled about 15% of damages); *In re Gen. Instruments Sec. Litig.*, 209 F. Supp. 2d 423, 431, 434 (E.D. Pa. 2001) (1/3 fee where settlement fund equaled about 11% of estimated damages); *In re Medical X-Ray Film Antitrust Litig.*, 1998 WL 661515, at *5, 7-8 (E.D.N.Y. Aug. 7, 1998) (1/3 fee where recovery was 17% of damages); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 percent fee where recovery was 10% of damages).

MOTION
NO. 10-cv-00198-JLR
901445.1

- 11 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

achieved after thorough pre-filing negotiations).[8]  *Pelletz* is instructive.  In *Pelletz*, as here, the parties engaged in a period of pre-filing investigation, informal discovery, and settlement discussions.  *Pelletz*, 255 F.R.D. 537, 539; *see also* Selbin Decl. at ¶ 46.  The parties' investigation there included the informal exchange of "confidential, proprietary information," Class counsel's interviews with absent class members about their experiences and problems with the product, and analysis of the allegedly defective product at issue.  *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. at 543.  The parties undertook these efforts over the course of just over a year.  Selbin Decl. at ¶ 46.  In reviewing the settlement there, Judge Coughenour found that the pre-filing investigation, informal discovery, and settlement discussions provided "sufficient information to determine the relative strengths and weaknesses of their respective positions" such that "[b]oth sides were well-prepared to reach an adequate settlement and decide on appropriate remedies based on the strengths and weaknesses of their bargaining positions ascertained during the investigation."  *Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. at 543.

Here, as in *Pelletz*, before the lawsuit was even filed, Arthur Counsel initiated thorough investigation, conducting relevant factual and legal research.  *See* Selbin Decl. ¶¶ 8-39. Arthur Counsel obtained substantial informal discovery from Sallie Mae, including relevant information and documents such as client loan records, form loan applications and promissory notes in use during the class period, and case law and relevant rulemaking by the Federal Communications Commission ("FCC").  *Id.* at ¶¶ 8-11.  After filing suit, Arthur Counsel obtained hundreds of pages of confidential, proprietary information contained in Sallie Mae's files and databases and received answers to questions posed by Arthur Counsel.  *Id.* at ¶¶ 23-25.  Arthur Counsel requested and obtained confirmatory discovery, including discovery of facts necessary to reasonably confirm the terms of the MOU and administrative plans and procedures for compliance with the terms of the Settlement.  *Id.* at ¶¶ 37-38.  Class counsel spent numerous

---

[8] *See also Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (noting potential for far greater lodestar absent settlement, thereby justifying a lodestar multiplier of 4.0).

MOTION
NO. 10-cv-00198-JLR
901445.1

- 12 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

hours analyzing the information and documents Sallie Mae provided, requesting supplementation and analyzing relevant legal theories.  In addition, Class counsel spent substantial time interviewing over 100 potential class members, evaluating their claims, and using that information in support their settlement efforts.  *Id.* at ¶¶ 13, 17.  By working hard to accomplish these tasks in a short time frame, Class counsel were able to efficiently negotiate a favorable and timely result for the Settlement Class members.

Of course, because of the early settlement, Class counsel have spent fewer hours prosecuting this action than they would have had the case proceeded to trial.  As one court has explained, however, in calculating an appropriate fee, "counsel should be rewarded, not punished" for helping to obtain a prompt settlement without running up lodestar through needless litigation.  *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 52-53 (2000).  Moreover, the common fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."  *See Wright*, 259 F.R.D. at 477 (quoting *Van Gemert*, 444 U.S. at 478, (1980)).  Therefore, "awarding Plaintiffs' attorneys a percentage of the total settlement amount w[ill] adequately compensate Class counsel for the proposed settlement at an early stage in the litigation."  *Id.* Moreover, awarding Class counsel a reasonable percentage of the common fund promotes the public policy of encouraging timely settlements.  *Vizcaino*, 290 F.3d at 1051 (noting "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief"); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (approving fee awards that amount to 30 percent of the common fund in part because such a benchmark "will encourage Class counsel to move for early settlement").[9]

_____

[9] *See also In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding that Class counsel's significant investigation and research supported approval of settlement, even absent extensive formal discovery); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); *In re Critical Path, Inc.*, No. C 01-00551 WHA, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002) ("Through

MOTION
NO. 10-cv-00198-JLR
901445.1

- 13 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1    Thus, the second factor weighs in favor of finding that the requested fee award is

2    reasonable.

3              **3.      Class Counsel Have Faced Substantial Risk of Non-Payment.**

4    Third, Class counsel have devoted substantial resources to the prosecution of this case

5    with no guarantee that counsel would be compensated for their time or reimbursed for their

6    expenses.  *See* Selbin Decl. ¶¶ 52-53; Terrell Decl. ¶ 2; Meyer Decl. ¶ 2; Campion Decl. ¶ 4;

7    Swigart Decl. ¶ 3; Kazerounian Decl. ¶ 3.  To the contrary, payment of counsel's fees and

8    expenses has always been contingent on a successful recovery of damages.  *Id.*  Thus, there was a

9    substantial risk of nonpayment.  Moreover, the Court has not yet certified the case as a class

10   action, and Sallie Mae has steadfastly denied that class certification was appropriate.[10]  Sallie

11   Mae also has denied liability for the claims Plaintiffs' have asserted.  Even if Plaintiffs ultimately

12   prevail at trial, a result that is not guaranteed, they likely face a long and costly appeals process.

13             **4.      Fees in Similar Actions.**

14   Fourth, Plaintiffs' request is in line with fees requested in similar actions.  Class counsel

15   have requested 24.8 percent of the common fund, an amount which is *lower* than the 25 percent

16   benchmark in the Ninth Circuit.  In addition, the requested fee is consistent with fees awarded in

17   recent Ninth Circuit cases involving similar TCPA claims.  *See, e.g.*, *Bellows v. NCO Financial*

18   *Systems, Inc.*, No. 07-CV-1413 W(AJB), 2009 WL 35468, at *8 (S.D. Cal. Jan 5, 2009)

19   (awarding fees and costs equal to 31.6% of the settlement fund).

20   In short, Counsel's fee request is reasonable under the "percentage of the fund" method.

21   While this approach provides an independent ground for granting the fee request, a "cross-check"

22   under the lodestar method also demonstrates that Counsel's request is reasonable.  *See MCL 4th* §

23   14.121 (noting "[a] number of courts favor the lodestar as a backup or cross-check on the

24

25   protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of
     getting nothing").
     [10] For settlement purposes only, Sallie Mae has conditionally stipulated to class certification.  *See*
26   Settlement § III.A.

MOTION
NO. 10-cv-00198-JLR
901445.1

- 14 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1  percentage method when the fees might be excessive").

2     **C.     The Lodestar-Multiplier Cross-Check Confirms the Requested Fee.**

3         The lodestar-multiplier method is more typically used in cases where there is no true

4  common fund like the fund established by the Settlement in this case.  Class counsel respectfully

5  submit, therefore, that the percentage-of-the-fund method best suits this case, and that they are

6  entitled to award on that basis.  *Hanlon,* 150 F.3d at 1029 (noting that lodestar method is used

7  more often in case where "there is no way to gauge the net value of the settlement or any

8  percentage thereof.").  In any event, the lodestar-multiplier method confirms the propriety of the

9  requested fee here.[11]

10        The first step in the lodestar method is to multiply the number of hours counsel reasonably

11 expended on the litigation by a reasonable hourly rate.  *See Hanlon*, 150 F.3d at 1029. Once this

12 raw lodestar figure is determined, the court may take into consideration additional factors to

13 enhance the lodestar, including:

14             (1) the time and labor required; (2) the novelty and difficulty of the
              questions involved; (3) the requisite legal skill necessary; (4) the
15            preclusion of other employment due to acceptance of the case; (5)
              the customary fee; (6) whether the fee is fixed or contingent; (7) the
16            time limitations imposed by the client or the circumstances; (8) the
              amount at controversy and the results obtained; (9) the experience,
17            reputation, and ability of the attorneys; (10) the 'undesirability' of
              the case; (11) the nature and length of the professional relationship
18            with the client; and (12) awards in similar cases.

19 *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Hanlon*, 150 F.3d at 1029;

20 *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006).  The court may then enhance the

21 lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee."  *See Vizcaino*, 290 F.3d at

22 1051 n.6 (citing cases with multipliers ranging from 0.6 to 19.6); *Steiner v. Am. Broad. Co.*,

23 248 Fed. Appx. 780, 783 (9th Cir. 2007) (25% fee reasonable where effective multiplier was

24 6.85); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994)

25 ───────────────
[11] Like an award based on a percentage-of-the-fund, a fee award based upon a lodestar enhanced
26 by a multiplier may be paid from a common fund obtained for a class.  *See Fischel v. Equitable
   Life. Assur. Soc'y,*, 307 F.3d 997, 1007-1008 (9th Cir. 2002).

MOTION
NO. 10-cv-00198-JLR
901445.1
- 15 -
TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1   (citations omitted).[12]   Upward adjustments may be appropriate based on the results obtained, the

2   quality of representation, the complexity and novelty of the issues presented, the risk of

3   nonpayment, and any delay in payment.  *MCL 4th* § 14.122, at 261.

4               **1.        Class counsel's lodestar is reasonable.**

5               Since they first began investigating the claims in this case over a year ago, Class counsel

6   have incurred more than $760,000 in fees and expended $76,245.70 in litigation expenses related

7   to the prosecution of this action.  Selbin Decl. ¶¶ 42-43, 51; Terrell Decl. ¶ 5; Meyer Decl. ¶ 5;

8   Campion Decl. ¶ 7; Swigart Decl. ¶ 6; Kazerounian Decl. ¶ 6.  Counsel estimate they will incur

9   approximately $300,000 in fees to see this case through its final resolution, including the work

10  necessary to oversee that the claims process is properly carried out and attending the hearing on

11  final approval.  *See* Selbin Decl. ¶ 41.  In all, Class counsel have devoted more than 1,877 hours

12  to the investigation, development, litigation and resolution of this complex case.  Selbin Decl. ¶¶

13  42-43, 51; Terrell Decl. ¶ 5; Meyer Decl. ¶ 5; Campion Decl. ¶ 7; Swigart Decl. ¶ 6; Kazerounian

14  Decl. ¶ 6.  This includes time spent investigating the claims of the Settlement Class Members,

15  conducting discovery, researching and analyzing legal issues, and engaging in settlement

16  negotiations.  Selbin Decl. ¶¶ 8-9, 42-43, 51; Terrell Decl. ¶¶ 4; Meyer Decl. ¶¶ 4-5; Campion

17  Decl. ¶ 6; Swigart Decl. ¶ 5; Kazerounian Decl. ¶ 5.[13]  Class counsel anticipate spending an

18  additional 750 hours seeing this case through its final resolution.  *See* Selbin Decl. ¶ 41.[14]

19

20  [12] *See also*, *e.g.*, *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000)
    (40% award of $71.2 million fund; cross-check multiplier of 19.6); *In re Rite Aid Corp. Sec.*

21  *Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (25% award of $193 million fund; multiplier of 4.5-
    8.5); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (25% of $126,000,000

22  fund; multiplier of 6.96); *In re RJR Nabisco, Inc. Sec. Litig*, 1992 WL 210138 (S.D.N.Y Aug. 24,
    1992) (25% of $72.5 million; multiplier of 6).

23  [13] In providing this general overview, Plaintiffs and Class counsel do not waive and, in fact,
    specifically reserve all protections afforded by the attorney-client privilege and work product
    doctrine.

24  [14] Given that Class counsel has responded to approximately 2,500 Class member calls in only the
    first month since Class notice was distributed, Class counsel estimate that they could receive an

25  additional 7,500 calls before the claims period ends on February 26, 2011.  If each call takes and
    average of only five minutes, Class counsel will expend at least another 625 hours on this

26  litigation in responding to Class member concerns alone.

MOTION
NO. 10-cv-00198-JLR
901445.1                                            - 16 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1    Throughout this case, Class counsel prosecuted the claims of Sallie Mae consumers

2    efficiently and effectively.  Knowing it was possible they would never be paid for their work,

3    counsel had no incentive to act in a manner that was anything but economical.  *See Moreno v.*

4    *City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend

5    unnecessary time on contingency cases in the hope of inflating their fees.  The payoff is too

6    uncertain, as to both the result and the amount of the fee.").  That said, counsel took their charge

7    seriously and endeavored to represent the interests of the class members to the greatest extent

8    possible.

9        The lodestar calculations of Class counsel are based on reasonable hourly rates.  Class

10   counsel set their rates for attorneys and staff members based on a variety of factors, including

11   among others: the experience, skill and sophistication required for the types of legal services

12   typically performed; the rates customarily charged in the markets where legal services are

13   typically performed; and the experience, reputation and ability of the attorneys and staff

14   members.  Selbin Decl. ¶¶ 44-47; Terrell Decl. ¶¶ 7-8; Meyer Decl. ¶ 6; Campion Decl. ¶¶ 10-13;

15   Swigart Decl. ¶¶ 9-14; Kazerounian Decl. ¶¶ 9-14.  The rates charged for attorneys and staff

16   members working on this matter range from $125.00 to $850.00, with the majority of the work

17   performed by Mr. Selbin at an hourly rate of $650.00 and Mr. Hutchinson at an hourly rate of

18   $390.00.  *See* Selbin Decl. ¶ 43; Terrell Decl. ¶ 5; Meyer Decl. ¶ 5; Campion Decl. ¶ 7; Swigart

19   Decl. ¶ 6; Kazerounian Decl. ¶ 6.  Recently, Judge Coughenour found that Mr. Selbin and Lieff

20   Cabraser Heimann, & Bernstein, LLP's rates were "reasonable for the work performed in each of

21   [Counsel's] respective communities by attorneys of similar skill, experience, and reputation."  *See*

22   *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1326 (W.D. Wash. 2009) (approving hourly

23   rates for work performed in Seattle that ranged from $415 to $760); *see also Grays Harbor*

24   *Adventist Christian Sc. v. Carrier Corp.*, No. C05-5437, 2008 WL 1901988, at *3 (W.D. Wash.

25   Apr. 24, 2008) (approving the hourly rates of Jonathan D Selbin and Beth A. Terrell following a

26   reasonableness review); *see also* Selbin Decl. ¶¶ 45-47 (listing the federal court's that have

MOTION
NO. 10-cv-00198-JLR
901445.1

- 17 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1   specifically approved Class counsel's rates as reasonable); Terrell Decl. ¶ 8 (same); Meyer Decl.

2   ¶ 6 (same); Campion Decl. ¶¶ 10-11; Swigart Decl. ¶¶ 9-10; Kazerounian Decl. ¶ 10.  In light of

3   the detailed breakdown provided by counsel in their respective declarations, and the arguments

4   offered above, Class counsel submit that their lodestar calculations are based on reasonable rates.

5               **2.      A significant multiplier is warranted.**

6           The fee requested by Class counsel reflects a multiplier of 6.31 on their total lodestar.

7   Such a multiplier is reasonable given the outstanding result Class counsel have achieved for the

8   Settlement Class, the risks involved in taking the legal claims to trial, and the complexity of the

9   case.  *See MCL 4th* § 14.122, at 261.  The multiplier is likely to go down given that Class counsel

10  expects to expend an additional 750 hours seeing this case through its final resolution.  *See* Selbin

11  Decl. ¶ 41.

12          Furthermore, Plaintiffs' requested multiplier falls well-within the range of multipliers

13  approved in a common fund case.  *See supra* and footnote 11.  In light of this authority, Plaintiffs'

14  request for a multiplier of 6.31 is appropriate and should be granted.

15              **a.      Class counsel Achieved Exceptional Results for the Class.**

16          Plaintiffs have negotiated an excellent settlement for the Class.  Ninth Circuit courts have

17  long recognized that the result obtained by Class counsel is a principal factor in considering an

18  enhanced lodestar multiplier.  *See, e.g.*, *Kerr*, 526 F.2d at 70.  As noted above, Class counsel

19  obtained the right to halt completely the cellular phone calls at issue as well as a substantial

20  monetary payment.  These excellent results strongly support an upward enhancement.

21              **b.      The Contingent Nature of This Case.**

22          The public interest is served by rewarding attorneys who assume representation on a

23  contingent basis with an enhanced fee to compensate them for the risk they might be paid nothing

24  at all for their work.  *In re Wash. Pub. Power*, 19 F.3d at 1299.  Because Class counsel agreed to

25  prosecute this case on contingency with no guarantee of ever being paid, they faced substantial

26  risk should they proceed to trial.  From the outset, prosecution of this action on behalf of the

MOTION
NO. 10-cv-00198-JLR
901445.1

- 18 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

Class has involved significant risk.  Section III.B.3., *supra*.  In agreeing to represent the Class on a contingent basis, Class counsel risked their own resources with no guarantee of recovery. Selbin Decl. ¶¶ 52-53; Terrell Decl. ¶ 2; Meyer Decl. ¶ 2; Campion Decl. ¶ 4; Swigart Decl. ¶ 3; Kazerounian Decl. ¶ 3.  The risk that Class counsel could recover nothing in this case, on its own, justifies a multiplier.

### c.      The Novelty and Difficulty of Questions Involved

The lodestar amount should be enhanced to account for the novelty and complexity of the questions involved.  While Class counsel were confident in their ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering Sallie Mae's substantial opposition and the complexity of the issues involved.  The claims in this case involved numerous issues of law that were complex and truly novel.  Nonetheless, Class counsel agreed to represent the Class and, through their skill and extraordinary effort, successfully overcame formidable defenses to obtain excellent relief for the Class.  A multiplier is warranted under these circumstances.  *See Vizcaino*, 290 F.3d at 1048 (affirming enhanced fee where counsel "pursued this case in the absence of supporting precedents" and "against [defendant's] vigorous opposition throughout the litigation").

### d.      The Experience, Reputation and Ability of Counsel

The reputation, experience, and ability of Class counsel were essential to the success of this litigation.  As noted in the accompanying declarations, Class counsel have extensive experience in consumer class action and other complex litigation.  Selbin Decl. ¶¶ 2-7, Exh. A; Terrell Decl. ¶ 3, Exh. A; Meyer Decl., Exh. A; Campion Decl. ¶¶ 10-12; Swigart Decl. ¶¶ 9-13; Kazerounian Decl. ¶¶ 9-13.  Their skills in developing the factual and legal record and settling the case were essential to achieving this result.  Moreover, Class counsel's history of aggressive, successful prosecution of consumer class actions made credible their commitment to pursue this litigation until it provided a fair result for the Class.  Through their skill, reputation, and ability, Class counsel were able to obtain a Judgment providing outstanding relief for the Class.

MOTION
NO. 10-cv-00198-JLR
901445.1

- 19 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

**IV.     THE PAYMENT OF COSTS IS FAIR AND REASONABLE**

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970)).  The modest litigation expenses Class counsel incurred in this case were necessary to secure the resolution of this litigation.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation).  All in all, Class counsel worked hard to bring this case to a successful resolution in the face of a staunch defense, and the fees and costs payment provided for in the settlement is fair and reasonable.

**A.     Class counsel's Expenses Were Reasonably Incurred**

Throughout the course of this litigation, Class counsel had to incur out-of-pocket costs totaling $76,245.70.  Selbin Decl. ¶¶ 50-51, Exh. D; Terrell Decl. ¶ 9, Exh. B; Meyer Decl. ¶ 7, Exh. B; Campion Decl. ¶ 9; Swigart Decl. ¶ 8; Kazerounian Decl. ¶ 8.  The modest litigation expenses Class counsel incurred in this case include the following:  (1) copying, mailing, and messenger expenses; (2) computer research expenses; (3) factual investigation expenses; and (4) travel expenses.  *See id.*  Class counsel put forward these out-of-pocket costs without assurance that they would ever be repaid.  Selbin Decl. ¶¶ 52-53; Terrell Decl. ¶ 2; Meyer Decl. ¶ 2; Campion Decl. ¶ 4; Swigart Decl. ¶ 3; Kazerounian Decl. ¶ 3.  These out-of-pocket costs were necessary to secure the resolution of this litigation.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, computerized legal research fees, and mediation expenses are relevant and necessary expenses in a class action litigation).

The Class Notice informed Class Members that Class counsel would seek a combined

MOTION
NO. 10-cv-00198-JLR
901445.1

- 20 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

award of fees and costs no greater than $4,875,000.  In light of the expenses Class counsel has
had to incur to bring this case to its current settlement posture, Class counsel's request for a total
award of $4,798,754.300, which includes $76,245.70 in costs, is reasonable.

## V.   THE REQUESTED INCENTIVE AWARDS FOR THE NAMED PLAINTIFFS ARE REASONABLE.

In addition, Class counsel ask the Court to award incentive payments to the named
Plaintiffs in the amount of $2,500 each.  Sallie Mae has agreed to pay these awards if approved.
*Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009)  ("The trial court
has discretion to award incentives to the class representatives."); *Grays Harbor Adventist
Christian School v. Carrier Corp.*, No. 05-0537 RBL, 2008 WL 1901988, at *6 (W.D. Wash.
April 24, 2008) (same).  Plaintiffs came forward to serve as proposed class representatives, kept
abreast of the litigation, and approved the proposed settlement terms after reviewing them and
consulting with Class counsel.  *See* Declarations of Mark A. Arthur, Cirilo Martinez, Para Najafi.

Unlike unnamed class members, who are passive beneficiaries of the representatives'
efforts on their behalf, named class representatives agree to be the subject of discovery, including
making themselves available as witnesses at deposition and trial, and subject themselves to other
obligations of named parties.  Small enhancement payments, which serve as premiums in addition
to any claims-based recovery from the settlement, promote the public policy of encouraging
individuals to undertake the responsibility of representative lawsuits.

A $2,500 incentive award to each Plaintiff is modest under the circumstances, and well in
line with awards approved by federal courts in Washington and elsewhere.  *See Pelletz*, 592 F.
Supp. 2d at 1329-30 & n.9 (approving $7,500 incentive awards where named plaintiffs assisted
Class counsel, responded to discovery, and reviewed settlement terms, and collecting decisions
approving awards ranging from $5,000 to $40,000); *Grays Harbor*, 2008 WL 1901988, at *6
(approving $3,500 awards).

In light of Plaintiffs' effort and risk undertaken to obtain a meaningful result for the

MOTION
NO. 10-cv-00198-JLR
901445.1

- 21 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1  Class—and the fact that no Class Member has objected to the service payments – Plaintiffs

2  request that the Court approve the payment of $2,500 each to Plaintiff.

3  **VI.     THE CLASS RESPONSE TO DATE SUPPORTS APPROVAL OF THE REQUESTED FEE.**

4

5         To date, only two Class Members have submitted any objection whatsoever (Selbin Decl.

6  ¶¶ 59-60), despite direct mail notice to 4,858,053 Settlement Class members.  Keough Decl. at ¶

7  5, 3-12.  On November 15, 2010, Class counsel received four *pro se* objections through the

8  Court's ECF system.  Class counsel are reviewing them and will respond substantively to these

9  objections and any additional objections submitted by the December 13, 2010 objection deadline

10  in Plaintiffs' reply papers due December 17, 2010.

11  **VII.    CONCLUSION**

12         For the reasons stated above, Plaintiffs respectfully request that this Court award the

13  requested class representative incentive payments and attorneys' fees and costs.  At the final

14  approval hearing scheduled for 9:30 a.m., on Friday, December 17, 2010, Class counsel will

15  address any remaining questions the Court may have.

16

   Dated: November 15, 2010              By:_____/s/ Beth E. Terrell, WSBA #26759_____
17                                              Beth E. Terrell, WSBA #26759

18                                      TERRELL MARSHALL & DAUDT PLLC
                                        3600 Fremont Avenue North
19                                      Seattle, Washington  98103
                                        Telephone:  206-816-6603
20                                      Facsimile:   (206) 350-3528
                                        Email:  bterrell@tmdlegal.com
21

22

23

24

25

26

MOTION
NO. 10-cv-00198-JLR
901445.1                                   - 22 -                    TERRELL MARSHALL & DAUDT PLLC
                                                                     3600 FREMONT AVENUE NORTH
                                                                     SEATTLE, WASHINGTON  98103
                                                                     TELEPHONE:  (206) 816-6603

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
(admitted *pro hac vice*)
Email: jselbin@lchb.com
Alison Stocking
(admitted *pro hac vice*)
Email: astocking@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592


LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
(admitted *pro hac vice*)
Embarcadero Center West
275 Battery Street
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
Email:  dhutchinson@lchb.com

DAVID P. MEYER & ASSOCIATES CO., LPA
David P. Meyer (0065205)
(admitted *pro hac vice*)
Email:  dmeyer@dmlaws.com
Mathew R. Wilson (0072925)
(admitted *pro hac vice*)
Email:  mwilson@dmlaws.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiffs Arthur and Martinez, and the
Proposed Class*

HYDE & SWIGART
Joshua Swigart
(admitted *pro hac vice*)
Email: josh@westcoastlitigation.com
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:  (619) 233-7770
Facsimile:  (619) 297-1022

MOTION
NO. 10-cv-00198-JLR
901445.1

- 23 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

1        LAW OFFICES OF DOUGLAS J. CAMPION
    Douglas J. Campion

2        (admitted *pro hac vice*)
    Email: doug@djcampion.com

3        409 Camino Del Rio South, Suite 303
    San Diego, CA 92108-3507

4        Telephone:  (619) 299-2091
    Facsimile:  (619) 858-0034

5

6        KAZEROUNIAN LAW GROUP
    Abbas Kazerounian

7        (admitted *pro hac vice*)
    Email: ak@kazlg.com

8        2700 North Main Street, Suite 1050
    Santa Ana, CA 92866

9        Telephone:  (800) 400-6806
    Facsimile:  (800) 520-5523

10       *Attorneys for Plaintiff Najafi and the Proposed Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION
NO. 10-cv-00198-JLR
901445.1

- 24 -

TERRELL MARSHALL & DAUDT PLLC
3600 FREMONT AVENUE NORTH
SEATTLE, WASHINGTON  98103
TELEPHONE:  (206) 816-6603

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on November 16, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Kenneth E. Payson, WSBA #26369
Email:  kenpayson@dwt.com
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington  98101-3045
Telephone:  206.622.3150
Facsimile:  206.757.7700

Lisa M. Simonetti, *Admitted Pro Hac Vice*
lsimonetti@stroock.com
Julia B. Strickland, *Admitted Pro Hac Vice*
jstrickland@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1600
Los Angeles, California  90067
Telephone:  310.556.5819
Facsimile:  310.556.5959

*Attorneys for Defendant*

DATED this 16th day of November, 2010.

TERRELL MARSHALL & DAUDT PLLC

By: /s/ Beth E. Terrell, WSBA # 26759
Beth E. Terrell, WSBA # 26759
Email:  bterrell@tmdlegal.com
3600 Fremont Avenue North
Seattle, Washington  98103
Telephone:  206.816.6603
Facsimile:   206.350.3528

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR AWARD OF
ATTORNEYS' FEES AND COSTS AND SERVICE
AWARDS TO THE NAMED PLAINTIFFS
CASE NO. C10-0198 JLR

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528