THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

MARK A. ARTHUR, CIRILO MARTINEZ, HEATHER MCCUE and PARI NAJAFI on behalf of themselves and all others similarly situated,

Plaintiff,

v.

SALLIE MAE, INC.,

Defendant.

Case No. 2:10-cv-00198-JLR

**THIRD AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. § 227 *ET SEQ*. (TELEPHONE CONSUMER PROTECTION ACT)**

**DEMAND FOR JURY TRIAL**

Plaintiffs Mark A. Arthur, Cirilo Martinez, Heather McCue and Pari Najafi (hereinafter referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

**NATURE OF ACTION**

1. Plaintiffs bring this action for damages, and other legal and equitable remedies, resulting from the illegal actions of Sallie Mae, Inc. ("Sallie Mae") and/or other affiliates or subsidiaries of SLM Corporation ("SLM") in negligently, knowingly, and/or willfully contacting Plaintiffs on Plaintiffs' cellular telephones without their prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2. Sallie Mae is a Delaware corporation that maintains its headquarters at 12061 Bluemont Way, Reston, Virginia. Sallie Mae itself, and through its subsidiaries, provides education finance throughout the United States. Its primary business is to originate and service student loans by providing funding, delivery, and servicing support for education loans. Sallie Mae is a subsidiary of SLM, which is a holding company. SLM has affiliates and subsidiaries other than Sallie Mae, which engage in various businesses.

**JURISDICTION AND VENUE**

3. This matter in controversy exceeds $5,000,000, as each member of the proposed Class of tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Further, Plaintiffs allege a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

4. Venue is proper in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because Sallie Mae is a corporation that is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Sallie Mae's contacts with this District are sufficient to subject it to personal jurisdiction. Venue is also proper in this District because Plaintiff Arthur has resided in this District at all times relevant to these claims such that a substantial part of the events giving rise to the claims occurred in this District.

**PARTIES**

5. Plaintiff Mark A. Arthur is, and at all times mentioned herein was, an individual citizen of the State of Washington, who resides in Seattle, Washington.

6. Plaintiff Cirilo Martinez is, and at all times mentioned herein was, an individual citizen of the State of Michigan, who resides in Paw Paw, Michigan.

7. Plaintiff Pari Najafi is, and at all times mentioned herein was, an individual citizen of the State of California, who resides in Orange, California.

8. Plaintiff Heather McCue is, and at all times mentioned herein was, an individual citizen of the State of California, who resides in La Quinta, California.

9. On information and belief, Plaintiffs allege that Sallie Mae is, and at all times mentioned herein was, a corporation whose primary corporate address and headquarters are in Reston, Virginia, and that Sallie Mae does business throughout the country, including this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

10. In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA),[1] in response to a growing number of consumer complaints regarding certain telemarketing practices.

11. The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.[2]

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[3]

---

[1] Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991), codified at 47 U.S.C. § 227 (TCPA). The TCPA amended Title II of the Communications Act of 1934, 47 U.S.C. § 201 *et seq.*

[2] 47 U.S.C. § 227(b)(1)(A)(iii).

[3] *Rules and Regulations Implementing the Telephone Consumer Protection Act of*

13. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[4] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[5]

**FACTUAL ALLEGATIONS**

Plaintiff Arthur's Allegations

14. At all times relevant, Plaintiff Arthur was an individual residing in the State of Washington. Plaintiff Arthur is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

15. Beginning in or around 2003 when Plaintiff Arthur started law school, he took out a number of loans with Sallie Mae to cover the cost of his schooling.

16. In Plaintiff Arthur's Sallie Mae Signature Student Loan Applications and Promissory Notes, he did not list any cellular telephone number.

17. Plaintiff Arthur did not list a cellular phone number in or on any other documents at any time during the transaction that resulted in the debt owed to Sallie Mae, nor did he verbally provide Sallie Mae with a cellular phone number at any time during the transaction that resulted in the debt owed to Sallie Mae.

*1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[4] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*FCC Declaratory Ruling*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[5] *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

Plaintiff Martinez's Allegations

18. Plaintiff Martinez is an individual residing in the State of Michigan. Plaintiff Martinez is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

19. Beginning in or around 1997 when Plaintiff Martinez started law school, he took out a number of loans with Sallie Mae to cover the cost of his schooling.

20. In Plaintiff Martinez's Sallie Mae Signature Student Loan Applications and Promissory Notes, he did not list any cellular telephone number as he did not own a cellular phone at that time.

21. Plaintiff Martinez did not list a cellular phone number in or on any other documents at any time during the transaction that resulted in the debt owed to Sallie Mae, nor did he verbally provide Sallie Mae with a cellular phone number at any time during the transaction that resulted in the debt owed to Sallie Mae.

Plaintiff Najafi's Allegations

22. At all times relevant, Plaintiff Najafi was an individual residing in the State of California. Plaintiff Najafi is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

23. Plaintiff Najafi's son obtained a loan through Sallie Mae for educational purposes. Because of his credit status at the time, Sallie Mae required a co-signor for the loan. Plaintiff Najafi agreed to co-sign for her son's loan. Prior to co-signing for her son's loan, she had no relationship with Sallie Mae, nor did she subsequently contract with Sallie Mae.

24. In her son's Sallie Mae Signature Student Loan Applications and Promissory Notes, Plaintiff Najafi did not list any cellular telephone number.

25. Plaintiff Najafi did not list a cellular phone number in or on any other documents at any time during the transaction that resulted in the debt owed to Sallie Mae, nor did

she verbally provide Sallie Mae with a cellular phone number at any time during the transaction that resulted in the debt owed to Sallie Mae.

Plaintiff McCue's Allegations

26. Plaintiff McCue is an individual residing in the State of California. Plaintiff McCue is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

27. Beginning in or around 2004, Plaintiff McCue took out a number of loans with Sallie Mae to cover the cost of her schooling. *See* Declaration of Heather McCue ¶ 1, attached as Exhibit A.

28. In Plaintiff McCue's Sallie Mae Signature Student Loan Applications and Promissory Notes, she did not list any cellular telephone number. *Id.* ¶ 2.

29. Plaintiff McCue did not list a cellular phone number in or on any other documents at any time during the transaction that resulted in the debt owed to Sallie Mae, nor did she verbally provide Sallie Mae with a cellular phone number at any time during the transaction that resulted in the debt owed to Sallie Mae. *Id.* ¶ 3.

30. Plaintiff McCue is informed and believes that her loans have been "charged-off" as uncollectible. *Id.* ¶ 6.

Plaintiffs' Joint Allegations

31. Sallie Mae is, and at all times mentioned herein was, a corporation and a "person", as defined by 47 U.S.C. § 153(10).

32. Notwithstanding the fact Plaintiffs did not provide Sallie Mae with their cellular number at any time during the transaction that resulted in the debt owed, Sallie Mae and/or other affiliates or subsidiaries of SLM repeatedly contacted Plaintiffs on Plaintiffs' cellular telephones. Plaintiffs received repeated, harassing calls at all hours and often received telephone

calls within one hour of each other. Because these calls were prerecorded, Plaintiffs had no ability to request that the calls end or to voice their complaints to a real person.

33. All telephone contact by Sallie Mae and/or other affiliates or subsidiaries of SLM to Plaintiffs on their cellular telephones occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), and all calls that are the subject of this Complaint occurred within four years of the filing of this Complaint.

34. The telephone calls placed by Sallie Mae and/or other affiliates or subsidiaries of SLM to Plaintiffs' cellular telephones via the automatic telephone dialing system used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

35. Each telephone number that Sallie Mae and/or other affiliates or subsidiaries of SLM used to contact Plaintiffs, with a "prerecorded voice" made by an "automatic telephone dialing system," was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

36. The complained of telephone calls constituted calls not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

37. "During the transaction that resulted in the debt owed," Plaintiffs did not provide a wireless number to Sallie Mae nor otherwise provide express consent to receive prerecorded calls by Sallie Mae and/or other affiliates or subsidiaries of SLM on Plaintiffs' cellular telephones.[6]

38. Plaintiffs Arthur, Martinez, and Najafi did not own their current cellular telephones at the time Plaintiffs Arthur and Martinez, and Plaintiff Najafi's son, took out their loans. They therefore could not have given Sallie Mae express consent at that time to contact them on those cellular phones via an automatic telephone dialing system.

---

[6] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶ 10).

39. Plaintiffs did not provide "express consent" allowing Sallie Mae or other affiliates or subsidiaries of SLM to place telephone calls to Plaintiffs' cellular phones utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

40. Neither Sallie Mae nor other affiliates or subsidiaries of SLM made telephone calls to Plaintiffs' cellular phones "for emergency purposes" utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," as described in 47 U.S.C. § 227(b)(1)(A).

41. Telephone calls by Sallie Mae and/or other affiliates or subsidiaries of SLM to Plaintiffs' cellular phones utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiffs' prior express consent violated 47 U.S.C. § 227(b)(1)(A).

42. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Sallie Mae to demonstrate that Plaintiffs provided express consent within the meaning of the statute.[7]

## **CLASS ACTION ALLEGATIONS**

43. Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated (hereinafter referred to as "the Class").

44. Plaintiffs propose the following Class definition, subject to amendment as appropriate:

> All persons within the United States who, on or after October 27, 2005 until September 14, 2010, received a non-emergency telephone call from Sallie Mae or any other affiliate or subsidiary of SLM Corporation to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls during the transaction that resulted in the debt owed.

[7] *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

Collectively, all these persons will be referred to as "Class members." Plaintiffs represent, and are members of, the Class. Excluded from the Class are Sallie Mae and any entities in which Sallie Mae has a controlling interest, Sallie Mae's agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

45. Plaintiffs do not know the exact number of members in the Class, but based upon the representations of Sallie Mae as to its market share, Plaintiffs reasonably believe that Class members number at minimum in the millions. This Class size includes consumers holding loans owned or serviced by Sallie Mae, persons who co-signed loans owned or serviced by Sallie Mae, and all other persons who Sallie Mae (mis)dialed. This Class size also includes consumers who received calls from other affiliates or subsidiaries of SLM.

46. Plaintiffs and all members of the Class have been harmed by the acts of Sallie Mae and/or of other affiliates or subsidiaries of SLM.

47. This Class Action Complaint seeks money damages and injunctive relief.

48. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified easily through records maintained by Sallie Mae.

49. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact involving the class claims predominate over questions which may affect individual Class members. Those common questions of law and fact include, but are not limited to, the following:

a. Whether, beginning on October 27, 2005, Sallie Mae and/or other affiliates or subsidiaries of SLM made non-emergency calls to Plaintiffs and Class members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

b. Whether Sallie Mae and/or other affiliates or subsidiaries of SLM can meet its burden of showing it obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated), during the transaction that resulted in the debt owed, to make such calls;

c. Whether the complained of conduct was knowing and/or willful;

d. Whether Sallie Mae is liable for damages, and the amount of such damages; and

e. Whether Sallie Mae and/or other affiliates or subsidiaries of SLM should be enjoined from engaging in such conduct in the future.

50. As persons who received numerous and repeated telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without their prior express consent within the meaning of the TCPA, Plaintiffs assert claims that are typical of each Class member. Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have no interests which are antagonistic to any member of the Class.

51. Plaintiffs have retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

52. A class action is the superior method for the fair and efficient adjudication of this controversy. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

53. Sallie Mae and/or other affiliates or subsidiaries of SLM have acted on grounds generally applicable to the Class, thereby making final injunctive relief and

corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**CAUSES OF ACTION**

**FIRST COUNT**

**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.***

54. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

55. The foregoing acts and omissions constitute numerous and multiple negligent violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

56. As a result of the alleged negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting violation of the TCPA in the future.

58. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

**SECOND COUNT**

**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.***

59. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

60. The foregoing acts and omissions constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

61. As a result of the alleged knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and each member of the Class is entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

62. Plaintiffs and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA in the future.

63. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against Sallie Mae:

A. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

B. As a result of the alleged willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. Injunctive relief prohibiting such violations of the TCPA in the future;

D. An award of attorneys' fees and costs to counsel for Plaintiffs and the Class;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

F. Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all counts so triable.

Dated: July 25, 2011.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By: /s/ Beth E. Terrell, WSBA # 26759

Email: bterrell@tmdwlaw.com
Michael D. Daudt, WSBA #25690
Email: mdaudt@tmdwlaw.com
Marc C. Cote, WSBA #39824
Email: mcote@tmdwlaw.com
936 North 34th Street, Suite 400
Seattle, Washington 98103-8869
Telephone: 206.816.6603
Facsimile: 206.350.3528

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Jonathan D. Selbin
(admitted *pro hac vice*)
Email: jselbin@lchb.com
Alison Stocking
(admitted *pro hac vice*)
Email: astocking@lchb.com
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Daniel M. Hutchinson
(admitted *pro hac vice*)
Embarcadero Center West
275 Battery Street
San Francisco, California 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: dhutchinson@lchb.com

DAVID P. MEYER & ASSOCIATES CO., LPA
David P. Meyer (0065205)
(admitted *pro hac vice*)
Email: dmeyer@dmlaws.com
Mathew R. Wilson (0072925)
(admitted *pro hac vice*)
Email: mwilson@dmlaws.com
1320 Dublin Road, Ste. 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

*Attorneys for Plaintiffs Arthur, Martinez, McCue and the Proposed Class*

HYDE & SWIGART
Joshua Swigart
Email: josh@westcoastlitigation.com
Robert L. Hyde
Email: bob@westcoastlitigation.com
David C. Leimbach
Email: dleimbach@westcoastlitigation.com
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022

LAW OFFICES OF DOUGLAS J. CAMPION
Douglas J Campion
Email: doug@djcampion.com
409 Camino Del Rio South, Suite 303
San Diego, CA 92108-3507
Telephone: (619) 299-2091
Facsimile: (619) 858-0034

KAZEROUNIAN LAW GROUP
Abbas Kazerounian
Email: ak@kazlg.com
2700 North Main Street, Suite 1050
409 Camino Del Rio South, Suite 303
Santa Ana, CA 92866
Telephone: (800) 400-6806
Facsimile: (800) 520-5523

*Attorneys for Plaintiff Najafi and the Proposed Class*

925694.1