1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  MARK A. ARTHUR, et al.,                    CASE NO. C10-0198JLR

11                          Plaintiffs,        ORDER DENYING PLAINTIFFS'
                                               MOTION FOR PRELIMINARY
12             v.                              APPROVAL OF AMENDED
                                               SETTLEMENT AND DENYING
13  SALLIE MAE, INC.,                          INTERVENOR'S MOTION TO
                                               LIFT STAY
14                          Defendant.

15                  **I.      INTRODUCTION**

16         This is a putative class action against Sallie Mae (a subsidiary of SLM

17  Corporation ("SLM")) and SLM's subsidiaries and affiliates ("the Released Parties") for

18  allegedly making automated telephone calls to Plaintiffs' and putative class members'

19  cellular telephones without their prior express consent in violation of the Telephone

20  Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.  Plaintiffs and Sallie Mae

21  ("the Parties") have reached an amended settlement agreement ("the Amended

22  Settlement"), and now move the court for an order certifying a provisional settlement

class, preliminarily approving the amended settlement agreement, approving the

proposed notice program, and scheduling a final approval hearing.  (Mot. (Dkt. # 184).)

Intervenor Judith Harper opposes this motion (Resp. (Dkt. # 189)) and has also moved

the court to lift the stay that is currently in place to allow her to conduct limited discovery

and file a motion to certify a subclass (Stay Mot. (Dkt. # 198)).  Having considered the

submissions of the parties, the balance of the record, and the relevant law, and having

heard the oral arguments of counsel on January 5, 2012, the court DENIES Plaintiffs'

motion for preliminary approval of the Amended Settlement (Dkt. # 184) and DENIES

Ms. Harper's motion to lift the stay (Dkt. # 198).

## II.    BACKGROUND

**A. Factual Background**

The named Plaintiffs either took out student loans with Sallie Mae or co-signed on

Sallie Mae student loans.  (3d Am. Compl. ("Compl.") (Dkt. # 164) ¶¶ 15, 19, 23, 27.)

They allege that the Released Parties violated the TPCA by calling them and other Class

Members[1] on their cellular telephones without their prior express consent.  (*See generally*

*id.*)  The TCPA prohibits the making of calls using an automatic telephone dialing system

---

[1] The third amended complaint defines the class as:

All persons within the United States who, on or after October 27, 2005 until
September 14, 2010, received a non-emergency telephone call from Sallie Mae or
any other affiliate or subsidiary of SLM Corporation to a cellular telephone
through the use of an automatic telephone dialing system or an artificial or
prerecorded voice and who did not provide prior express consent for such calls
during the transaction that resulted in the debt owed.

(Compl. ¶ 44.)

or an artificial prerecorded voice to any telephone number assigned to a cellular telephone service unless the call is made for emergency purposes or with the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A). Statutory damages under the TCPA are $500 for each violation, and the court may treble this amount if it finds that the violation was willful or knowing. 47 U.S.C. § 227(b)(3). Sallie Mae denies Plaintiffs' allegations and claims to possess evidence that many Class Members' gave their prior express consent. (Mot. at 12.)

**B. Procedural Background**

The Parties have engaged in extensive settlement negotiations and participated in a handful of mediations with the Honorable Edward I. Infante (Ret.). (*See, e.g.*, Selbin Decl. (Dkt. # 33) ¶¶ 11-12, 26-28; Supp. Infante Decl. (Dkt. # 186) ¶ 3.) In September 2010, the Parties reached a settlement ("the Original Settlement") on behalf of a class that included all individuals to whom a Released Party had placed a call to a cellular telephone using an automatic telephone dialing system and/or an artificial or prerecorded voice. (Mot. to App. Orig. Settlement (Dkt. # 32).) The court preliminarily approved the Original Settlement, provisionally certified a settlement class, and entered an order staying all proceedings except those necessary to implement the terms of the Original Settlement. (9/17/2010 Order (Dkt. # 39).) In December 2010, the court held a final approval hearing but did not approve the Original Settlement and the motion for attorneys' fees because the Parties did not give the class enough information regarding the fee request or enough time to object; additionally, the notice sent to class members did not identify by name all of the Released Parties. (Min. Entry (Dkt. ## 89, 103).)

1    Between January and May 2011, Sallie Mae identified approximately three million

2    additional class members.  (Supp. Selbin Decl. (Dkt. # 185) ¶¶ 4, 7.)  As a result, the

3    parties engaged in additional discovery and reopened settlement negotiations.  (*See id.* ¶¶

4    5-6.)

5    In early 2011, Ms. Harper, who is allegedly a Charged-off Class Member,[2] filed a

6    motion to intervene (Dkt. # 134), which the court granted in June 2011 (June 6, 2011

7    Order (Dkt. # 154)).  Ms. Harper had filed a similar putative class action in the Northern

8    District of Illinois against her loan provider, Arrow Financial, one of the Released

9    Parties.  (*Id.* at 2.)  The court allowed intervention because, among other reasons, the

10   Arrow Financial class members were primarily Charged-off Class Members and therefore

11   did not receive monetary relief under the Original Settlement.  (*Id.* at 2-3.)  After Ms.

12   Harper intervened, the court permitted Plaintiffs to amend their complaint to add Plaintiff

13   Heather McCue, who is also a Charged-off Class Member.  (July 21, 2011 Order (Dkt. #

14   163).)

15   In August 2011, the Parties (and Ms. Harper) participated in a final mediation

16   before Judge Infante, and as a result, entered into the proposed Amended Settlement.

17   (Supp. Selbin Decl. ¶ 10.)  Plaintiffs now move the court to preliminarily approve the

18   Amended Settlement.  (*See generally* Mot.)  Ms. Harper has responded, arguing that the

19   proposed settlement class does not satisfy the requirements of Federal Rule of Civil

20   _____

21   [2] Charged-off Class Members are those whose "outstanding extension of credit owed to
     or serviced by Sallie Mae or any other affiliate or subsidiary of SLM Corporation . . . has been
     recognized as a loss for financial accounting purposes."  (Am. Settlement (Dkt. # 184-1) §

22   II(D).)

1  Procedure 23 and is not fair, adequate, or reasonable.  (*See generally* Resp.)  In reply,

2  Sallie Mae contends that Ms. Harper lacks standing and should be dismissed from this

3  lawsuit.  (SM Reply (Dkt. # 195) at 3-6; *see also* Pl. Reply (Dkt. # 192).)

4       Shortly after Plaintiffs filed the instant motion, Ms. Harper filed a motion for class

5  certification without requesting relief from the stay that has been in place since the

6  preliminary approval of the Original Settlement (Dkt. # 191).  The court struck her

7  motion with leave to re-file if and when she successfully obtained relief from the stay.

8  (11/14/2011 Order (Dkt. # 197).)  As a result, Ms. Harper has filed a motion to lift the

9  stay so that she could obtain limited discovery regarding her claims against Arrow

10  Financial and re-file her motion to certify a sub-class.  (*See generally* Stay Mot.)

11  Plaintiffs and Sallie Mae oppose her motion.  (Pl. Resp. to Stay Mot. (Dkt. # 199); SM

12  Resp. to Stay Mot. (Dkt. # 200).)

13       **III.    PROPOSED AMENDED SETTLEMENT AGREEMENT**

14       The following is a summary of the key terms of the Amended Settlement (Dkt. #

15  184-1).

16  **A.  The Settlement Class**

17       The settlement class ("the Class") is defined as:

18  [A]ll persons to whom, on or after October 27, 2005 and through
19  September 14, 2010, Sallie Mae Inc. or any other affiliate or subsidiary of
    SLM Corporation placed a non-emergency telephone Call to a cellular
20  telephone through the use of an automated dialing system and/or an
    artificial or prerecorded voice.  Excluded from the Settlement Class are
21  SLM Corporation, Sallie Mae, Inc. and any other affiliate or subsidiary of
    SLM Corporation, and any entities in which any such companies has a
22  controlling interest, the Judge to whom the Action is assigned and any

member of the Judge's staff and immediate family, as well as all persons who validly request exclusion from the Settlement Class.

(Am. Settlement § II(EE).)

**B. Prospective Relief for Class Members**

All Class Members are entitled to submit a valid and timely Revocation Request, which will prevent the Released Parties from using an automated dialing system and/or artificial or prerecorded voice to contact them on their cellular telephones. (*Id.* § III(C)(1)(a).) The Revocation Request form is one page, and Class Members will have 165 days from the court's approval of the Amended Settlement to submit one. (*Id.*) The Revocation Request form requires Class Members to list the cellular telephone number that they want the Released Parties to stop calling, their account number (if applicable), and a current non-cellular telephone number, if one exists. (*Id.*) If a Revocation Request is incomplete, inaccurate, and/or incorrect, the claims administrator will notify the Class Member, who will have 35 days to re-submit. (*Id.*) Any Class Member who does not submit a valid and timely Revocation Request will be deemed to have provided prior express consent to the making of calls by the Released Parties to any phone number reflected in such entities' records. (*Id.*)

**C. Monetary Relief for Class Members**

In connection with the Amended Settlement, Sallie Mae has agreed to create a fund in the amount of $24,150,000.00 ("the Fund"). (*Id.* § II(S).) The Fund will cover

payments to Class Members, *Cy Pres* distributions, and all settlement costs.[3] (*Id.* §
III(C)(2).) Monetary relief for eligible Class Members will be paid from the Fund after
the deduction of all settlement costs. (*Id.*)

For purposes of awarding monetary relief, the Class is divided into four groups:
(1) Delinquent Class Members, meaning those who at any time, have been 180 days or
more delinquent on their payments on extensions of credit owned or serviced by a
Released Party (*id.* § II(L)); (2) Charged-off Class Members, meaning those who have an
extension of credit that has been charged off (i.e. recognized as a loss) for financial
accounting purposes (*id.* § II(D)); (3) No Lending/Servicing Class Members, meaning
those who have never had a lending or servicing relationship with a Released Party,
except persons who were named as references on credit applications with a Released
Party (*id.* § III(C)(2)(f)); and (4) Regular Class Members, meaning those who are not
Delinquent, Charged-off, or No Lending/Servicing Class Members.

Regular Class Members may receive a Cash Award or a Reduction Award. (*Id.* §
III(C)(2)(b).) A Cash Award is a cash payment that is likely to be between $20 and $40.
(*Id.* §§ II(C), III(C)(2)(b), III(C)(2)(d).) A Reduction Award is a one-time reduction
from the principal balance of a Class Member's outstanding extension of credit. (*Id.* §
II(AA).) Delinquent Class Members who have ultimately paid the full amount owed

_____

[3] Settlement costs include: (1) attorneys' fees and costs awarded to class counsel by the
court; (2) incentive awards to Plaintiffs; (3) all costs of printing and providing notice to the
Class; (4) costs of administering the Amended Settlement (i.e. costs of printing and mailing
settlement payments or claim forms, costs of maintaining designated post office box, cost of
processing claim forms and revocation requests, etc.); and (5) fees, expenses and all other costs
of the claims administrator. (Am. Settlement § II(GG).)

under the terms of the relevant agreement are also entitled to a Cash Award. (*Id.* § III(C)(2)(c).) All other Delinquent Class Members are only eligible for a Reduction Award. (*Id.*) Charged-off Class Members and No Lending/Servicing Class Members are not eligible for any monetary award. (*Id.* III(C)(2)(e)-(f).)

To obtain either a Cash Award or a Reduction Award, Class Members must complete and submit a one-page claim form to the claims administrator within 165 days of the court preliminarily approving the Amended Settlement. (*See id.* Ex. A.) If a claim form is incomplete or inaccurate, the class member may re-submit a claim form within 35 days of the sending of a notice of defect by the claims administrator. (*Id.* III(C)(2)(h).)

**D. *Cy Pres* Distributions**

Sallie May will pay a dedicated *Cy Pres* distribution in the amount of $85,000, which will not come out of the Fund. (*Id.* §§ II(K), III(C)(2), III(C)(4).) In addition, if there is any money remaining in the Fund after all other distributions are made, such monies will also constitute a *Cy Pres* distribution. (*Id.* § III(C)(4).)

**E. Class Release**

The Amended Settlement provides that Plaintiffs and Class Members will release the Released Parties[4] from any and all rights, duties, obligations, claims, actions, causes of action or liabilities: (1) that relate to the administration of the Amended Settlement, or (2) that arise out of or are related in any way to the use of an "automated telephone dialing system" and/or an "artificial or prerecorded voice" to make calls or send text

---

[4] There are 39 Released Parties, including Sallie Mae, SLM, and SLM's affiliates and subsidiaries. (Am. Settlement § II(CC).)

messages to a cellular telephone used by any of the Released Parties in connection with efforts to contact or attempt to contact Class Members.  (*Id.* § III(N).)  This release includes claims under the TCPA, Washington's Automatic Dialing and Announcing Device statute, or any other statutory or common law claim arising from the use of automatic telephone dialing systems and/or an artificial or prerecorded voice, which includes state and federal unfair and deceptive practices acts, state and federal debt collection practices acts, invasion of privacy, conversion, breach of contract, unjust enrichment, specific performance, and/or promissory estoppel.  (*Id.*)

**F.  Attorneys' Fees and Costs**

Plaintiffs will move the court for an award of attorneys' fees and expenses to be paid from the Fund in the amount of $4,830,000, which is 20% of the amount of the Fund.  (*Id.* § III(E).)  Plaintiffs Arthur, Martinez, and Najafi each will request incentive awards of $2,500.  (*Id.* § III(D).)  Plaintiff McCue, who is a Charged-off Class Member, will not receive any payment.

**G.  Class Notice**

Within 30 days of the court's approval of the Amended Settlement, the claims administrator will issue a new class notice to all Class Members.  (*Id.* §§ III(F), (G).) There will be four versions of the notice, and the appropriate version will be sent to: (1) Class Members who received notice of the Original Settlement and have filed a claim form; (2) Class Members who received notice of the Original Settlement and filed only a Revocation Request; (3) Class Members who opted out of the Original Settlement; and (4) all other Class Members.  (Supp. Keough Decl. (Dkt. # 187) ¶ 8.)

All four versions will inform Class Members of, among other things: (1) the benefits that the Amended Settlement provides; (2) new extended deadlines for Class Members to file a claim form and/or Revocation Request, opt out, withdraw a past exclusion request, and object to the Amended Settlement and/or Plaintiffs' attorneys' fees and costs request; (3) the date for the hearing on final approval; and (4) the address for the settlement website. (*Id.* ¶ 4; *see also* Am. Settlement Exs. B-G.) No later than 60 days after the court's approval of the Amended Settlement, Class Counsel will file their motion for attorneys' fees and costs and post the same on the Settlement Website. (*Id.* III(H)(1).)

The notices will be sent via email to Class Members for whom an email address is available and who have not opted out of receiving email from Sallie Mae, and via regular mail to all other Class Members. (Am. Settlement §§ III(G)(2)-(3).) The claims administrator will also publish notice of the Amended Settlement in two national newspapers. (*Id.* § III(G)(4); *see also id.* Ex. C.) Sallie May will pay $45,000 towards the cost of this notice, in addition to the amounts it will contribute to the Fund. (*Id.* § III(G)(4).)

## IV.    ANALYSIS

### A. Ms. Harper's Standing

As noted above, the Parties contend that Ms. Harper lacks standing because no Released Party made calls to her cellular telephone, and therefore she may not object to the motion for preliminary approval. (*See generally* Pl. Reply; SM Reply) To satisfy the

minimum constitutional requirements for standing under the Case or Controversy

requirement of Article III:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, while general factual allegations may suffice at the pleading stage, on summary judgment the plaintiff must present specific facts supporting each element of the standing inquiry. *Id.*

The court concludes that Ms. Harper has sufficiently established standing to remain in the case at this time. She has submitted a declaration stating that she received numerous calls from Arrow Financial on her cellular telephone and that she did not consent to these calls. (*See* Harper Decl. (attached as Ex. A to Rubel Decl. (Dkt. # 204-1)).) Although Sallie Mae has submitted a declaration stating that Arrow Financial only called Ms. Harper's home and fax lines (Namm Decl. (Dkt. # 201) ¶ 5), and raised valid questions regarding Ms. Harper's credibility (Simonetti Decl. (Dkt. # 202) ¶ 13), there is a question of fact regarding whether Ms. Harper received calls on her cellular phone.

Such questions of fact not appropriate for decision by the court at this time. *See Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007) (noting that a genuine dispute of material fact precludes summary judgment); *Hall v. Glenn's Ferry Grazing Ass'n*, No. CV-03-386-S-BLW, 2006 WL 1148153, at *1 (D. Idaho Mar. 9, 2006) (holding that questions of fact prevented summary judgment on issue of standing). Ms. Harper's declaration sufficiently establishes her standing to proceed with the litigation.

**B. Plaintiffs' Motion to Preliminarily Approve the Amended Settlement**

As a matter of express public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). Nevertheless, the court must determine the propriety of class certification and review the proposed Amended Settlement to assess its overall fairness. As described in more detail below, although the court determines that certification of a provisional settlement class is appropriate and the Amended Settlement is generally fair, the notices submitted with Plaintiffs' motion are lacking and require the court to deny the instant motion with leave to file another motion for preliminary settlement approval that addresses the concerns raised here.

**1. Propriety of Class Certification**

Where, as here, the parties have reached a settlement agreement prior to class certification, "the court 'must pay undiluted, even heightened, attention to class certification requirements' because, unlike in a fully litigated class action suit, the court

will not have future opportunities 'to adjust the class, informed by the proceedings as they unfold.'" *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 658 (E.D. Cal. 2008) (quoting *Achem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "The parties cannot 'agree to certify a class that clearly leaves any one requirement unfulfilled,' and consequently the court cannot blindly rely on the fact that the parties have stipulated that a class exists for purposes of settlement." *Id.* (quoting *Berry v. Baca*, No. 01-02069, 2005 WL 1030248, at *7 (C.D. Cal. May 2, 2005)); *see also Achem*, 521 U.S. at 622 (observing that nowhere does Rule 23 say that certification is proper simply because the settlement appears fair).

Plaintiffs seek certification under Rules 23(a) and (b)(3), and therefore must satisfy the court that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; (5) questions of law or fact common to class members predominate over individual questions affecting only individual members; and (6) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(a) and (b)(3). Ms. Harper contests all elements except for numerosity, which is clearly satisfied by the eight million-member class. *See* Fed. R. C. P. 23(a)(1). The court, therefore, begins its discussion with commonality and concludes, for the reasons discussed below, that certification of a provisional settlement class is appropriate.

### a. Commonality

Rule 23(a)(2) requires the court to find that "there are questions of law or fact common to the class." Fed. R. Civ. P 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). It is not necessary that members of the proposed class "share every fact in common or completely identical legal issues." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). Rather, the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "Even a single [common] question" is sufficient to satisfy Rule 23(a)(2). *Dukes*, 131 S. Ct. at 2556 (internal quotation omitted, alteration in *Dukes*).

Plaintiffs contend that commonality is satisfied "because there are many questions of law and fact common to the Settlement class that center on Sallie Mae's practice of using an automated dialing system with a prerecorded voice, without regard to the behavior of or individual facts related to members of the Settlement Class." (Mot. at 34.) Because commonality requires only a single common question, *Dukes*, 131 S. Ct. at 2556, Plaintiffs have satisfied this element. Ms. Harper nevertheless argues that the Amended Settlement's treatment of different subsets of the Class in terms of eligibility for a monetary award calls into question whether there is a common nucleus of fact. (Resp. at 9.) This argument is unpersuasive because a common core of salient facts is not

1  necessary where there are shared legal issues, *see Hanlon*, 150 F.3d at 1019, and there

2  remain common questions regarding Sallie Mae's actions.

3          **b.   Typicality**

4        Typicality is satisfied if "the claims or defenses of the representative parties are

5  typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). It is not

6  necessary that the class representatives' injuries be identical to all class members'

7  injuries, "only that the unnamed class members have injuries similar to those of the

8  named plaintiffs and that the injuries result from the same, injurious course of conduct."

9  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), *abrogated on other grounds by*

10  *Johnson v. California*, 543 U.S. 499, 504-05 (2005).

11        Plaintiffs satisfy this element because their claims arose out of the same general

12  course of events as Class Members (i.e., automated calls from the Released Parties), and

13  they will make essentially the same legal arguments as Class Members to prove their

14  claims. (Mot. at 34.) Ms. Harper nevertheless argues that typicality is not satisfied

15  because Plaintiffs Arthur, Martinez, and Najafi ("Original Lead Plaintiffs") only intended

16  to advance the rights of Sallie Mae student loan debtors and did not negotiate on behalf of

17  any other subsidiary or on behalf of Charged-off Class Members. (Resp. at 10.) Ms.

18  Harper is correct that Plaintiffs only represent Sallie Mae borrowers, however the

19  Amended Settlement does not distinguish between Class Members based on which

20  Released Party contacted them, therefore this factor is irrelevant. Furthermore, Ms.

21  Harper ignores the fact that Plaintiff McCue is a Charged-off Class Member and fails to

22

1  explain why Plaintiff McCue's claims are not typical of those of other Charged-off Class

2  Members.  Typicality is satisfied.

3              **c.    Adequacy of Representation**

4          Rule 23(a)(4) requires Plaintiffs to demonstrate that they will fairly and adequately

5  protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions

6  determines legal adequacy: (1) do the named plaintiffs and their counsel have any

7  conflicts of interest with other class members and (2) will the named plaintiffs and their

8  counsel prosecute the action vigorously on behalf of the class?"[5] *Hanlon*, 150 F.3d at

9  1020.

10         *Conflicts of Interest:*  "Examination of potential conflicts of interest has long been

11  an important prerequisite to class certification" and is "especially critical when a class

12  settlement is tendered along with a motion for class certification."  *Id.*  The court must

13  give "heightened scrutiny to cases in which class members may have claims of different

14  strengths."  *Id.*  Plaintiffs assert that their "interests are coextensive with, and not

15  antagonistic to, the interests of the Settlement Class."  (Mot. at 34.)  Ms. Harper argues

16  that Original Lead Plaintiffs have a conflict of interest with Charged-off Class Members

17  because the Amended Settlement fails to award Charged-off Class Members any

18  monetary relief.  (Resp. at 10.)  Ms. Harper, however, ignores the fact that Plaintiff

19  McCue is a Charged-off Class Member, and asserts no reason why Plaintiff McCue

20  ──────────────

21      [5] Ms. Harper argues that Plaintiffs are not adequate representatives because the Amended
    Settlement provides unequal relief to Charged-off Class Members.  (Resp. at 10-13.)  This
22  argument is "better dealt with as part of the substantive review of the settlement than under the
    Rule 23(a) inquiry," and is therefore addressed later in this opinion.  *Staton*, 327 F.3d at 958.

would have a conflict of interest with other Charged-off Class Members.  There is no apparent conflict of interest, despite the disparate relief provided in the Amended Settlement.

*Vigorous Advocacy on Behalf of the Class:*  The court's "second adequacy inquiry is directed to the vigor with which the named representatives and their counsel will pursue the common claims."  *Hanlon*, 150 F.3d at 1021.  "Although there are no fixed standards by which 'vigor' can be assayed, considerations include competency of counsel and, in the context of a settlement-only class, an assessment of the rational for not pursuing further litigation."  *Id.*  Plaintiffs assert that their counsel are qualified, competent, and have extensive experience in prosecuting complex class actions.  (Mot. at 34 (citing Dkt. ## 52-57).)  In addition, Plaintiffs maintain that they have good reason for not pursuing litigation further given Sallie Mae's affirmative defenses, the risk that any judgment they obtain in this case would be subject to remittitur, and the risk of protracted appeals.  (Mot. at 30-31.)  The court agrees with Plaintiffs' assertions and finds this element satisfied.

### d.  Predominance

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id.* at 623.  "[T]he main concern in the predominance inquiry . . . [is] the balance between individual and common issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 956 (9th Cir. 2009).  The predominance requirement is "far more demanding" than Rule 23(a)(2)'s commonality requirement.  *Id.* at 624.  To satisfy this requirement, Plaintiffs assert that "common questions present a

significant aspect of the case and can be resolved for all Settlement Class Members in a single adjudication." (Mot. at 34.) Although this assertion is conclusory, the court finds it sufficient to establish predominance in this case, particularly given the fact that at least one other court has provisionally certified a similar TCPA settlement class. *See Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) (preliminarily certifying TCPA class for settlement purposes and finding predominance satisfied). Furthermore, Ms. Harper's undeveloped argument that individual issues predominate because Charged-off Class Members do not get monetary relief (Resp. at 13) is unpersuasive.

### e. Superiority

A class action is the superior method of resolving Class Members' TCPA claims. *See Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 650 (W.D. Wash. 2007) (finding that class action was superior to other methods in TCPA cases because, among other reasons, individual damages are small and class members would be unlikely to litigate claims on their own). Ms. Harper nevertheless argues that a class action is not the superior vehicle for Charged-off Class Members' claims because they could also bring FDCPA claims, which would entitle them to an additional $1,000 in damages. (Resp. at 14.) This argument, however, does not change the fact that individual damages are small and class members are unlikely to litigate claims on their own. A class action is the superior method for resolving Class Members' claims.

1        **2. Overall Fairness of Amended Settlement**

2        Because certification of a provisional settlement class is appropriate, the court now

3 turns to the substance of the Amended Settlement. In determining whether to

4 preliminarily approve a class action settlement, "the court must carefully consider

5 'whether a proposed settlement is fundamentally fair, adequate, and reasonable,'

6 recognizing that '[i]t is the settlement taken as a whole, rather than the individual

7 component parts, that must be examined for overall fairness.'" *Staton v. Boeing Co.*, 327

8 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d 1at 1026); *see also* Fed. R. Civ.

9 P. 23(e) (outlining class action settlement procedures). At the preliminary approval

10 stage, the court "need only 'determine whether the proposed settlement is within the

11 range of possible approval.'" *Alberto*, 252 F.R.D. at 666 (quoting *Gatreaux v. Pierce*,

12 690 F.2d 616, 621 n.3 (7th Cir. 1982)). "Essentially, the court is only concerned with

13 whether the proposed settlement discloses grounds to doubt its fairness or other obvious

14 deficiencies such as unduly preferential treatment of class representatives or segments of

15 the class, or excessive compensation for attorneys." *Id.* (internal quotation and citation

16 omitted).

17        The court has reviewed the Amended Settlement and determined that, as a general

18 matter, it satisfies the Ninth Circuit's requirement of overall fairness, *see Hanlon*, 150

19 F.3d at 1026; however, there are deficiencies with the proposed notices that require the

20 court to deny the instant motion. As noted above, there are a number of class notices that

21 will be sent to different groups of Class Members. First, the proposed notices list only 10

22 of the 39 Released Parties, and thus fail to fully identify who is a Class Member. It is

insufficient that the notices direct individuals to the Settlement Website for a more detailed list of affiliates and subsidiaries.  The notices must name all of the Released Parties.

Second, some of the proposed notices improperly define the Class as including individuals who received an automated call on a cellular telephone from Sallie Mae or any other affiliate or subsidiary of SLM *without prior express consent*.  (*See* Amended Settlement Ex. B ("You are a Class Member if, on or after October 27, 2005 to September 14, 2010, you received an automated call on a cellular telephone from Sallie Mae or any other affiliate or subsidiary of SLM Corporation *without your prior express consent*.").)  The Class is not defined in terms of prior express consent, so the phrase "without your prior express consent" must be removed from the class definition in all notices.

Finally, counsel for Ms. Harper argued for the first time at oral argument that the Revocation Request form improperly requires Class Members to identify a non-cellular telephone number, if available, that the Released Parties can add to their files in lieu of a cellular telephone number.  Ms. Harper's counsel asserted that, under the Fair Debt Collection Practices Act, consumers may request that debt collectors cease *all* telephone calls, and therefore Class Members should not be required to provide a non-cellular telephone number.  As the parties have not briefed this issue, the court reserves ruling and directs the Parties to address this issue in any future motion to preliminarily approve the Amended Settlement.

Ms. Harper has also asserted a number of other reasons why the court should deny Plaintiffs' motion. (*See generally* Resp.) Although the court has determined that Plaintiffs' motion must be denied for the reasons stated above, it will address Ms. Harper's arguments here to avoid the need for re-briefing these issues in conjunction with any future motion to preliminarily approve settlement. Ultimately, the court concludes that Ms. Harper has not raised any additional issue in her opposition brief that would cause it to deny preliminary settlement approval.

Ms. Harper first argues that the Amended Settlement is inadequate because it does not provide Charged-off Class Members with a Cash Award or a Reduction Award. (Resp. at 10-13.) Having considered the Amended Settlement as a whole, including the allocation of monetary relief, the court concludes that it is within the range of reasonableness required for preliminary approval. Although "[c]ourts generally are wary of settlement agreements where some class members are treated differently than others," a settlement still may be fair and adequate if there is a reasoned basis for allocating monetary relief differently among different class members. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010). Plaintiffs have explained that Charged-off Class Members do not receive a monetary award because they have a weaker claim to damages given Sallie Mae's affirmative defense of offset. (Pl. Reply at 7.) Even if Sallie Mae would not prevail with this defense, as Ms. Harper contends (Resp. at 11-12), the risk created by the potential offset decreases the value of Charged-off Class Members' claims. *C.f. Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (approving allocation of settlement proceeds where

some class members received less money because there was a greater risk that they would recover nothing at trial).

Further, Charged-off Class Members are entitled to prospective relief, which is the core relief provided in the Amended Settlement (Supp. Infante Decl. ¶ 5), and if they deem this insufficient, they may opt out of the Class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving allocation of settlement proceeds in securities fraud class action, even though many class members received no relief, and noting that two practical considerations strengthened the court's position: (1) dissatisfied class members were free to opt out, and (2) if the court decertified the class, it was possible that no one would recover anything). In the words of the Ninth Circuit, "[t]he present Settlement at least allows damages for some members of the class where damages might otherwise be unobtainable for any member of the class." *Id.* Accordingly, the court will not deny preliminary approval because of the Amended Settlement's allocation of monetary relief.

Ms. Harper next asserts that the prospective relief provided in the Amended Settlement—the opportunity to submit a Revocation Request and stop all calls to a Class Member's cellular telephone—is illusory because "if a class member forgets to submit a claim form, is not aware that she must submit a claim form, or otherwise fails to do so, she is automatically deemed to have granted 'prior express consent' as defined within the TCPA." (Resp. at 15.) The court concludes, however, that the prospective relief is fair, adequate, and reasonable, and well within the range of possible approval. *See Alberto*, 252 F.R.D. at 666.

1    Ms. Harper next contends that the Amended Settlement creates arbitrary

2    distinctions between class members, in particular between Regular Class Members and

3    Delinquent Class Members.  (Resp. at 15.)  Regular Class Members and Delinquent Class

4    Members differ in their eligibility for a Cash Award or a Reduction Award, and this

5    distinction is based on each Class Member's payment history.  The court is not persuaded

6    by Ms. Harper's argument and finds that there is sufficient justification for the

7    distinctions between Class Members to warrant preliminary settlement approval.

8        Finally, Ms. Harper asserts that the amount of the Fund established in the Original

9    Settlement did not increase sufficiently after Sallie Mae discovered the additional three

10   million class member.  (Mot. at 16.)  The court disagrees and finds that the amount of the

11   Fund is within the range of reasonableness for purposes of preliminarily approving the

12   Amended Settlement.[6]

13       In sum, the court denies the motion to preliminarily approve the Amended

14   Settlement without prejudice to re-filing in the future because the notices are improper

15   and the parties have not briefed the possible shortcoming in the Revocation Request form

16   raised by Ms. Harper's counsel at oral argument.  The court does not deny the motion for

17   any of the reasons raised by Ms. Harper in her opposition brief.

18

19

_____

20       [6] The Parties, however, should keep in mind that at any final fairness hearing, the court
will have to compare the settlement amount to the Parties' "estimates of the maximum amount of
21   damages recoverable in a successful litigation."  *See In re Mego Fin. Corp. Securities Litig.*, 312
F.3d 454, 459 (9th Cir. 2000).  The Parties did not submit their estimates in support of the instant
22   motion, but should include this information in any future motion for preliminary approval.

**C. Ms. Harper's Motion to Lift the Stay**

When the court preliminarily approved the Original Settlement in September 2010, the court stayed all proceedings in and related to this matter except for those to effectuate the settlement. (*See* 9/17/2010 Order.) Ms. Harper now moves the court to lift the stay so that she can issue limited discovery and file a motion to certify a sub-class. (*See generally* Stay Mot.) For the reasons explained below, the court denies Ms. Harper's motion.

A district court may exercise its discretion "to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109-13 (9th Cir. 2005). "Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX*, 300 F.2d at 268. The court may consider: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id.* (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).

Ms. Harper argues (1) the advanced stage of the case weighs in favor of overturning the stay, (2) maintaining the stay will prejudice her because she will not be able to pursue her claims, and (3) the stay is complicating, rather than simplifying, issues. (Stay Mot. at 5.) Plaintiffs respond that maintaining the stay will not prejudice Ms.

Harper but lifting it will prejudice them because it will delay their receipt of relief under the Amended Settlement and force them to expend time and effort responding to a baseless class certification motion.  (Pl. Resp. to Stay Mot. at 4-7.)

After considering these competing interests, the court declines to lift the stay. Although the court currently is denying Plaintiffs' motion for preliminary settlement approval, it is likely that Plaintiffs will be able to remedy the shortcomings identified in this order and obtain preliminary approval in the near future.  Maintaining the stay, therefore, will facilitate settlement.  Further, Ms. Harper will not be damaged from maintaining the stay because she may opt out of the Amended Settlement and fully pursue her claims individually against Arrow Financial.

## V.    CONCLUSION

For the reasons set forth herein, the court DENIES Plaintiffs' motion for preliminary settlement approval (Dkt. # 184), and DENIES Ms. Harper's motion to lift the stay (Dkt. # 198).  Plaintiffs may submit a revised motion for preliminary settlement approval that addresses the concerns raised in this order.

Dated this 10th day of January, 2012.


_____
JAMES L. ROBART
United States District Judge